THE STATE ex rel. FRANK H. FARRIS v. CORNELIUS ROACH, Secretary of State.

In Banc, November 26, 1912.

1. NOMINATIONS: Certificate: Duties of Secretary of State: Vacancy. By the provisions of the statutes, when the certificate of nomination of a State convention, in apparent conformity with the provisions of the law, is filed with the Secretary of State, and no objection is filed thereto within three days, it

State ex rel. v. Roach.

becomes his duty to certify the name of the nominee to the proper county officials, unless a subsequent certificate to fill a vacancy is filed by the state committee, acting within the scope of the powers conferred upon it by the statutes, in which case the last certificate supersedes the one first filed. But if the state committee exceeds its lawful powers by declaring a vacancy where none exists, its certificate, based upon such assumed vacancy, is invalid, and the certificate first filed, showing the original nomination, still stands.

2. ————: **Vacancy: Created by State Committee: Eligibility of Candidate.** The state committee has no power to create a vacancy in the nomination of a candidate for office. It has no power to determine the eligibility of the nominee. It has power to fill a vacancy "in case of any vacancy in said nomination, by resignation, death or otherwise;" but the word "otherwise" does not authorize it to judicially determine that the nominee is ineligible to the office, and having so determined, to declare a vacancy to exist and then proceed to fill it by naming some other person as the party's candidate for the office. The statute refers to a vacancy which exists before the committee acts.

3. ————: **Eligibility to Hold Office: Not for Consideration.** Where a candidate for an office has been regularly nominated by a convention of delegates held in accordance with the provisions of law and a certificate of nomination has been filed with the Secretary of State, and the state committee has attempted to declare him ineligible to hold the office and to create a vacancy and to nominate another person, and he brings mandamus to compel the Secretary of State to certify his nomination to the proper county officials in order that his name as a candidate for that office may appear on the party ballots, the question of his eligibility is not for determination; and, regardless of his qualification, it is the duty of the Secretary of State, being a mere ministerial officer, to certify out his nomination.

4. ————: ————: **Presidential Elector: Representative: Other Questions not Determined.** In such case, whether a nominee of a state convention for presidential elector is ineligible under the Constitution which declares that no Representative "shall, during the term for which he shall have been elected, be appointed to any office under this State," or whether a presidential elector is a State or a United States officer, or whether a State judicatory or Congress alone can determine his eligibility, is not for decision, since the state committee has no power to create a vacancy in the nomination, and its attempt to do so being wholly inoperative, the certificate theretofore filed, being in apparent conformity with the provisions of the law, and no objections thereto being filed within the time prescribed by

State ex rel. v. Roach.

statute, still stands, and thereafter the duties of the Secretary of State are purely ministerial, and he has no discretion to do otherwise than certify out his nomination as the statute requires. The court will not anticipate that he will be elected, nor will it permit a ministerial officer to determine his ineligibility to hold the office.

## Mandamus.

WRIT ALLOWED.

*Bland, Crites & Murphy* for relator.

(1) Our Constitution means that if a Senator or Representative desires another office during his term, he must procure it by the votes of the people—be elected; that he cannot exert the influence of his office by the passage of a law, or otherwise, to be appointed to an office. And even if this section of the Constitution applies it is not applicable to your relator, because, if elected, his office does not begin until after the expiration of the term to which he was elected, to-wit, ''the second Monday in January next.'' State ex rel. v. Childs, 63 Mich. 153. Although one elected to an office may at the time of the election be politically disqualified from holding the office, yet, if such disqualification be removed before the issuance of the certificate and taking possession of the office, he may legally hold it. State v. Van Beek, 87 Iowa, 569; Privett v. Bickford, 26 Kan. 52. (2) The Democratic State Committee had no authority to construe the Constitution, to pass on relator's qualifications, or to create a vacancy, nor has the respondent. 165 Ill. 527; State ex rel. v. Crittenden, 164 Mo. 261. (3) A presidential elector is not an officer, as commonly used and understood in the interpretation of the Constitution. Fitzgerald v. Green, 134 U. S. 377. (4) Sec. 5849, R. S. 1909, requires objections to a certificate of nomination to be filed in writing with the Secretary of State within three days after it is filed, and if no

such objections are filed, certificates are valid. The remedy is exclusive, the provisions mandatory, and must be strictly followed. State ex rel. v. O'Donnell, 62 N. J. L. 35; State ex rel. v. Piper, 50 Neb. 40; In re Cowie, 11 N. Y. Supp. 838; In re Nash, 72 N. Y. Supp. 1057; Ackerman v. Green, 201 Mo. 231; Priddy v. McKenzie, 205 Mo. 181; Com. Co. v. Spencer, 205 Mo. 105; State ex rel. v. Trust Co., 209 Mo. 472. The delegates in a nominating convention meet for the purpose of selecting and agreeing upon candidates for office to be supported by the party. Such a convention is a deliberative body, and unless it acts arbitrarily, oppressively or fraudulently, its final determination as to candidates, or any other question of which it has jurisdiction, will be followed by the courts. Any other rule would be intolerable, and permit the court to impose upon a party a nominee contrary to the wishes of its members, as finally expressed by their representatives in convention. Phillips v. Gallagher, 76 N. W. (Minn.) 287.

*Elliott W. Major,* Attorney-General, and *Charles G. Revelle,* Assistant Attorney-General, for respondent.

Although electors are appointed and act under and pursuant to the Constitution of the United States, they are no more officers or agents of the United States than are members of the State Legislatures when acting as electors of Federal Senators, or the people of the States when acting as electors of Representatives in Congress. Congress has never undertaken to interfere with the manner of appointing electors, or to interfere with any mode of appointment prescribed by the Legislature, and that it is entirely proper for the Legislature to prescribe these matters, as well as additional qualifications of electors. In re Green, 134 U. S. 377; McPherson v. Blacker, 146 U. S.

1. The position of elector is an office within the meaning of that term, and as used in our Constitution. Secs. 2753, 2755, R. S. 1909. Sec. 12, Art. 4, State Constitution, provides that "no Senator or Representative shall during the term for which he shall have been elected be appointed to any office under this State." That provision applies to all officers, even city officers, and renders a member of the Legislature ineligible thereto. State ex rel. v. Valle, 41 Mo. 29; Gibbons v. County, 107 Mo. 603. The expression, "during the term for which he shall have been elected," means the time for which he was elected to serve, whether he served the time or not, and a member resigning before the expiration of such time is, under the Constitution, ineligible to hold any office so prohibited. Ellis v. Lennon, 49 N. W. 308; State ex rel. v. Valle, 41 Mo. 29. In the event of relator's success at the November election, his appointment takes place on that day, which is at a time and during the term for which he was elected as Representative. The Federal Constitution provides that electors shall be "appointed," and the fact that the Legislature has adopted the means it has of designating our electors demonstrates that the method so provided is one by appointment, otherwise the Legislature would not be complying with the requirements of the Federal Constitution saying that they shall be appointed. The term "appoint" is used in the same sense in our Constitution, which renders relator ineligible, as it is used in the Federal Constitution. McPherson v. Blacker, 146 U. S. 1; State ex rel. v. New Orleans, 41 La. Ann. 156; State v. Compson, 54 Pac. 349. The fact that relator's new duties would not directly begin until after the expiration of the term for which he was elected, does not render him eligible. Finklea v. Farish, 160 Ala. 230; Searcy v. Grow, 15 Cal. 117; People v. Leonard, 73 Cal. 230; State v. Clark, 3 Nev. 566; In re Corliss, 11 R. I. 638; State v. Moores, 52 Neb. 786; Taylor v.

Sullivan, 45 Minn. 309; People v. Purdy, 47 N. Y. Supp. 601; Carroll v. Green, 148 Ind. 362; Roane v. Matthews, 75 Miss. 94; Springfield v. Butterfield, 98 Me. 155; 29 Cyc. 1376; State ex rel. v. Breuer, 235 Mo. 240.

FERRISS, J.—This is an original suit by way of mandamus to compel the Secretary of State to certify relator's name as a nominee for presidential elector-at-large on the Democratic ticket, to which he was nominated by the Democratic State Convention on February 20, 1912. A peremptory writ of mandamus was issued by the court on the 16th day of October, 1912. The writ was awarded on that day to meet an emergency. It was announced by the court that for want of time no opinion had been prepared, but that one would be filed later. This opinion, therefore, is to be read as if delivered on the date of the issuance of the writ.

The facts, as stated in the petition, are that the relator was elected to the State Legislature from Crawford county, at the November election, 1910, for a term of two years; that he qualified as such, took the oath of office, and participated in the deliberations of the last General Assembly, which adjourned in March, 1911; that on February 20, 1912, the Democratic party held a State convention at Joplin, Missouri, duly and regularly called by the State committee of that party, whereat the relator was unanimously nominated as a nominee and candidate of that party, to which he belonged and still belongs, for presidential elector-at-large to be voted for at the general election to be held in November, 1912. His nomination, with others, was regularly and properly certified to, and filed in the office of respondent as and within the time required by law. The validity of relator's nomination or of his certificate is not questioned, and no objections were filed thereto.

That in April, 1912, the relator moved from Crawford county to Phelps county, Missouri, where he now resides and is a qualified voter, whereupon, by virtue of Sec. 13 of Art. 4 of the State Constitution, the office of representative from Crawford county became vacant. Immediately after his removal to Phelps county relator tendered his resignation to the Governor, by whom it was accepted, since which time relator has not held any office of any kind.

That on October 3, 1912, seventeen members of the Democratic State Committee, a quorum and a majority, held a meeting in St. Louis, at which meeting, without notice to the relator, or giving him an opportunity to be heard, he was by a unanimous vote removed from the Democratic ticket as its candidate for presidential elector, the place declared vacant, and one George W. See, by unanimous vote, named to fill such vacancy. All of these acts were certified to the respondent, and this is the basis of his refusal to certify the relator's name as the Democratic nominee for presidential elector. The resolution removing Mr. Farris and declaring the office vacant, as certified to the respondent Secretary of State, is as follows:

"Whereas, the Constitution of the United States, by section one of article two thereof, provides that each State shall appoint, in such manner as the Legislature thereof may direct, a number of electors equal to the whole number of Senators and Representatives to which the State may be entitled in the Congress: and

"Whereas, it is provided by section twelve of article four of the Constitution of the State of Missouri, that 'no Senator or Representative shall, during the term for which he shall have been elected, be appointed to any office under this State, or any municipality thereof,' and

"Whereas, Hon. Frank H. Farris was, at the general election held in the State of Missouri on the

eighth day of November, nineteen hundred and ten, duly elected Representative from Crawford county, in the State of Missouri, for a term of two years; that the said Frank H. Farris thereafter qualified as such Representative, and took the oath of office, and served in that capacity; and

"Whereas, at the State convention of the Democratic party in the State of Missouri, on February twentieth, nineteen hundred and twelve, the said convention named the said Frank H. Farris as a presidential elector at large from the State of Missouri; and

"Whereas, this committee finds that the said Frank H. Farris is disqualified to serve as presidential elector at large from the State of Missouri by reason of his election as Representative in the General Assembly, as aforesaid, and by reason thereof a vacancy exists in the said office of presidential elector at large from the State of Missouri on the Democratic ticket."

The respondent demurred to the petition on the following grounds:

"1. Said petition fails to state facts sufficient to entitle relator to the relief prayed for, or to authorize the issuance of the writ of mandamus prayed for therein.

"2. Said petition and the matters and things therein stated are not sufficient in law or equity to entitle relator to the relief sought.

"3. The petition discloses upon its face that, under the Constitution of the State of Missouri and the Constitution and laws of the United States, relator is ineligible to appointment to the position of national elector, and that respondent is warranted and required to refuse to certify his name as a candidate on the Democratic ticket, or any other ticket, for the office or position of national elector."

I.   By the provisions of the statute (Secs. 5849 and 5850, R. S. 1909), when the certificate of nomination by the convention held on February 20, 1912, was filed with respondent, and no objections filed thereto, it became his duty to certify the name of relator as such nominee to the proper county officials.   Section 5849 provides that all certificates of nomination which are in apparent conformity with the provisions of law shall be deemed to be valid, unless objections are filed thereto within three days.   In the absence of such objections, the validity of such nomination stands unquestioned, and the duty of the Secretary of State to certify same is purely ministerial.   [State ex rel. v. Falley, 8 N. D. 90; State ex rel. v. Falley, 83 N. W. 860; State ex rel. v. Miller, 39 N. E. 24; People ex rel. v. Dist. Court, 31 Pac. 339.]   Subsequently, on October 3, 1912, and before respondent had certified out the nomination made by the convention, a second certificate was filed with him by the Democratic central committee of the name of George W. See, to fill an alleged vacancy caused by the alleged disqualification of relator, and his consequent removal as a candidate by the committee.   The respondent had then before him two certificates of nomination for the same office.   He decided that the one last filed by the committee superseded the former certificate, and was about to certify same when this action was instituted.

The law (Sec. 5847, 5848, 5870, R. S. 1909) authorizes the central committee to fill vacancies in certain named contingencies, and to certify nominations so made to the Secretary of State, and it is obvious that if the committee, in certifying a nomination to fill a vacancy, acts within the scope of the power conferred upon it by law, such certificate supersedes the one first filed, and should be recognized by the Secretary of State.   If, however, the central committee exceeds its lawful powers by declaring a vacancy where none exists, it is equally obvious that its certificate, based upon

such assumed vacancy, is invalid, and the certificate first filed, showing the original nomination, still stands. The controlling question in the case, then, is this: Was the central committee authorized by law to adopt the resolution of October 3, 1912, set out above?

The power of the committee to fill vacancies is found in said sections 5847, 5848 and 5870. Sections 5847 and 5848 are found in the chapter entitled "Nominations." Section 5847 provides for filing with the Secretary of State certificates of nomination regularly made by convention or otherwise, and then follows this proviso: "Provided, that in case of any vacancy in said nomination, by resignation, death or otherwise, the central committee, or a convention called for that purpose, of the party on whose ticket such vacancy may occur, may select and certify to the Secretary of State, county clerk or board of election commissioners the name or names of candidates to fill such vacancy."

Section 5848 provides "that for the purpose of making nominations to fill vacancies on a ticket previously nominated a majority of all the members-elect of a central committee shall be necessary to take action."

Section 5870 applies to vacancies occurring on a ticket nominated at a primary. It provides: "Vacancies occurring after the holding of any primary . . . shall be filled by the party committee of the district, county or State, as the case may be."

It is clear that when the committee met on October 3d, there was no vacancy on the ticket. At that meeting the committee undertook to pass on the eligibility of relator to the office in question, and, deciding that he was ineligible, declared, i. e., created a vacancy. The exact question is, has the committee power to try and determine the eligibility of a candidate previously nominated, and, upon finding against him, create a vacancy by declaring him removed from the ticket? No

such power is given to the committee in terms. If it exists, it must be by virtue of the word "otherwise" in section 5847 in the clause, "In case of any vacancy in said nomination, by resignation, death or *otherwise*." None of the other provisions of the statute above quoted refer to the cause of vacancy. To sustain the contention based upon this clause, it must be held .that the word "otherwise" contains within itself the grant of judicial power to a central committee to deprive a candidate, after he has been legally nominated, of the right conferred by such nomination, upon the ground of ineligibility. Such construction of the statute would extend its meaning far beyond the manifest intent of the Legislature, if not beyond the power of that body. The statute in question plainly refers to a vacancy which exists before the committee acts. This meaning becomes evident from the language of the statute. It provides that a vacancy may be filled by the committee "or a convention called *for that purpose* of the party on whose ticket such vacancy may occur." That is to say, when a vacancy exists, either the committee or a convention may meet and fill such vacancy. There is no ground for holding that this clause of the statute authorizes either the committee or the called convention to create a vacancy; certainly not to assume judicial functions, and declare regularly nominated candidates disqualified from holding office. It is inconceivable that the Legislature should attempt to confer upon a political committee the power to shape the destinies of the party, and, incidentally, the State, by giving to such committee the right to remove, without notice or hearing, a regularly nominated candidate whom the committee might subsequently decide was, for any reason or for no reason at all, ineligible, fill the vacancy so created, certify such action to the Secretary of State, and thus impose upon him the ministerial duty to certify out such substituted name to go upon the official ballot. Such power would

set at defiance the will of the people as expressed by
their delegates who, in convention assembled, made the
nominations, and presumably upon full consideration
of the qualifications of the candidates. The right of
the candidate who has been regularly nominated to
have his name submitted to the electors is a legal right,
and one not to be lost except upon judicial adjudica-
tion, and after due notice and opportunity to be heard.
We hold that the central committee had no legal power
to declare the relator ineligible, and that the certificate
of nomination of George W. See was invalid.

II. It is contended by respondent that, with the
certificate of See invalid, still the relator has no right
to have the original nomination certified by respond-
ent, because he is ineligible to hold the office of presi-
dential elector, and that, whatever may be the duty of
respondent, this court ought not, by means of its dis-
cretionary writ of mandamus, to aid relator in getting
an office which he cannot lawfully hold. The demurrer
challenges the right of relator to the certificate, on the
ground that the petition on its face shows that he is
ineligible to the office of presidential elector, because
of the provision in our State Constitution to the effect
that no Representative "shall, during the term for
which he shall have been elected, be appointed to any
office under this State." [Sec. 12, Art. 4.] It is as-
serted in behalf of respondent that the word "ap-
pointed" as used in the foregoing constitutional pro-
vision, is broad enough to cover an election, and that
the office of presidential elector is a State office. The
relator contends, on the other hand, that the office in
question is not a State office, that the word "ap-
pointed" in our Constitution does not apply to elective
offices, and that the qualifications for an elector are
prescribed by the Federal Constitution only in section
1 of article 2, which provides: "Each State shall ap-
point, in such manner as the Legislature thereof may

direct, a number of electors, equal to the whole number of Senators and Representatives to which the State may be entitled in the Congress; and no Senator or Representative, or person holding an office of trust or profit under the United States, shall be appointed an elector.''

Relator contends further that this court is without jurisdiction to pass on the qualifications of electors.

We have examined all the questions thus raised with care. None of them are free from difficulty. The U. S. Supreme Court, In re Green, 134 U. S. 377, said that presidential electors are not officers or agents of the United States. In the case of Todd v. Johnson, 99 Ky. 548, a majority of the court held presidential electors to be State officers. In a dissenting opinion, two judges held them not State officers, arguing that the office was created by the Federal Constitution, that State officers were created by the State, and that presidential electors were neither United States nor State officers, but "independent electors." Neither the State Constitution nor the statutes prescribe in terms the qualifications for presidential electors. No attempt at qualification is found outside the Federal Constitution referred to above. No jurisdiction is conferred in terms upon any court to determine their qualifications. As early as 1837, Congress recognized that there was no tribunal authorized to decide upon the qualifications of presidential electors. The following resolution was in that year adopted by both houses, but no further action taken:

"Should a case occur in which it became necessary to ascertain and determine upon the qualifications of electors of President and Vice President of the United States, the important question would be presented, what tribunal would, under the Constitution, be competent to decide? Whether the respective colleges of electors in the different States should decide upon the

qualifications of their own members, or Congress should exercise the power, is a question which the committee are of opinion ought to be settled by a permanent provision upon the subject.''

It will be perceived that this resolution contemplates two tribunals only, namely, the State electoral college or Congress. In 1876-7, while counting the electoral votes in the Hayes-Tilden election, Congress did in several instances pass upon the qualifications of individual electors, where votes were challenged on the ground that they were ineligible under the Federal Constitution. [Hinds Prec. 243, *et seq.*] In 1887, Congress enacted a law to govern the electoral count, which law seems to give the power to Congress to pass upon all objections to any vote. [Vol. 6, Fed. Stat., pp. 18, 19.] In People ex rel. Sherwood v. Board, 129 N. Y. 360, there was an application for a mandamus on the canvassing board to give a certificate of election to the candidate who received the highest vote for State Senator. The writ was refused on the ground that the candidate was ineligible. The court assumed jurisdiction of this question of eligibility, although the law provided that the Senate itself was the tribunal to pass upon the qualifications of its members. There was a strong protest by minority members of the court, and upon reasons which appear to us cogent, against this assumption of jurisdiction. It was urged by the dissenting members of the court that by usurping a jurisdiction which belonged finally to the Senate, and by holding the candidate ineligible, the court might withhold from him the title to an office which the Senate, the ultimate tribunal, if it had the opportunity, might decide him to be eligible to.

Upon mature consideration, we have decided that neither of the questions referred to above, nor the further question whether relator is in fact ineligible, is properly to be considered in this proceeding. We have decided in the first paragraph of this opinion that the

certificate filed by the central committee is invalid, and that as to the first certificate, no objections having been filed, the duty of the respondent is purely ministerial. If this were a proceeding to compel election officials to issue a certificate of election to a successful candidate, there would be great force in the argument against the mandamus in case the candidate should be shown to be ineligible. In such case. the court would be asked to order the canvassing officers to give the candidate title to an office which he could not legally hold, and it could be well said that, without regard to the fact that the respondents were ministerial officers, the court would not issue its discretionary writ in aid of an ultimate wrong. In the case of State ex rel. Snyder v. Newman, 91 Mo. 445, · the candidate for mayor of Pierce City who had received the highest number of votes at the election sought a mandamus against the canvassing officers, who had refused him a certificate of election on the ground that he was ineligible to the office for want of the necessary residence within the city. This court refused to issue the writ, and for reason says:

"On the pleadings, as they stand, it is admitted that the relator did not possess this qualification. A peremptory writ of mandamus will not be issued, unless the relator shows a clear right to the remedy which he asks. [State ex rel. Ensworth v. Albin, 44 Mo. 346.] The election of a person to an office who does not possess the requisite qualifications, gives him no right to hold the office. [1 Dill. Mun. Corp. (3 Ed.), Sec. 196.] As, by reason of his disqualifications, the relator was not entitled to hold the office, surely he has no right, at the hand of the court, to be armed with a certificate of election—evidence of title to that to which he has no right."

This statement is cited with approval by the Supreme Court of New York in People ex rel. Sherwood

v. Board, supra, l. c. 371, where also the controversy was over a certificate of election.

In the case before us the relator is not asking that the respondent be required to give him a title to the office. He has not been elected to the office, and may not be elected. A convention of his party has seen fit to nominate him as a candidate. This is but the first step. The law may prescribe, and has prescribed, qualifications for office-holders. It has also undertaken in recent years to regulate the manner in which candidates shall be nominated, but we are not aware of any law which undertakes to define the qualifications of candidates for nomination. So far as the law is concerned, the people may nominate and vote for an ineligible candidate at their risk. When such candidate seeks to be inducted into office, or even to secure the final act which recognizes his title, then the objection that he is ineligible may be interposed.

The difference between the situation here and the Snyder case, above cited, is clearly recognized by this court in State ex rel. v. Shannon, 133 Mo. 139. In the latter case the city auditor refused to approve the bond of a newly appointed superintendent of water-works, on the ground that the appointment, wanting the approval of the mayor, was invalid, the bond being otherwise satisfactory. This court issued its writ of mandamus to compel the auditor to approve the bond, holding that his duty in this regard was purely ministerial. The same ground of defense was interposed there as here, namely, that the relator was not lawfully entitled to hold the office, and therefore the auditor was justified in refusing to approve the bond. The court said:

"But we are of the opinion that the right of relator to the office cannot be inquired into in this proceeding. No authority or power is conferred on the comptroller of the city to pass upon or decide the validity of relator's claim to the office. His duty with

respect to the approval of the bond of the superintendent of waterworks is purely ministerial. The final act to complete the appointment was its approval by the board of public works of said city. This appears from the certificate of the president of the board of public works, attested by its seal and its secretary, to have been done on the fourth day of December, 1895, in which it is recited 'that on the fourth day of November, 1895, the board of public works of Kansas City, duly appointed W. L. Cameron as superintendent in the department of waterworks of said city, as provided by Ordinance Number 5801, approved April 27, 1894, which appointment was on the same day approved by the mayor, and on the twenty-second day of November, 1895, by a majority of the members of the upper house of the common council of said city.' This certificate was evidence of relator's appointment, which was consummated by the action of the board of public works when it approved it, and whether the proceedings in connection therewith were regular or not, as this is not a contest over an office, that question cannot be inquired into.

"When relator's appointment was approved by the board of public works, it became the duty of the comptroller to approve his bond when tendered to him for that purpose unless some valid legal objection existed to the bond itself. It was not for him to decide upon the legality of relator's appointment, or whether he was in fact entitled to hold the office. Upon that question we do not undertake to pass, as it is not involved in this proceeding. . . . Now, if the board of public works had refused to approve relator's appointment, or to certify thereto after it had made the same, and to which the mayor and upper house of common council had assented, and this proceeding were against said board to compel it to approve the appointment or certify thereto, then the legality of the appointment

might have been questioned by the board, as it was the final arbiter with respect thereto."

The court also quotes with approval the following from the case of People ex rel. v. Canal Appraisers, 73 N. Y. 443:

"When the act, the doing of which is sought to be compelled by mandamus, is the final thing, and if done gives to the relator all that he seeks proximately or ultimately, then the question whether he is entitled to have that act done, may be inquired into by the officer or person to whom the mandamus is sought, and is also to be considered by the tribunal which is moved to grant the mandamus, but where the act to be done is but a step towards the final result, and is but the means of setting in motion a tribunal which is to decide upon the right to the final relief claimed, then the inferior officer or tribunal may not inquire whether there exists the right to that final relief, and can only ask whether the relator shows a right to have the act done which is sought from him or it."

If we were to hold that, upon a mere certificate of nomination, the eligibility of a candidate may be challenged, as was done in this case, and an adjudication by the court be invoked thereon, we should have established a dangerous precedent for the assumption of judicial functions by ministerial officers and central committees.

We hold that the question of the eligibility of relator is not before us for decision, and that, regardless of his qualifications, it is the duty of respondent to certify out the nomination of relator. It is ordered that the peremptory writ issue. All concur except *Woodson, J.,* not sitting.