

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

NATALIE A. VOWELL, )
)
Appellant, )
)
v. ) WD77591
)
JASON KANDER, IN HIS OFFICIAL ) Opinion filed: June 19, 20214
CAPACITY AS MISSOURI )
SECRETARY OF STATE, )
)
Respondent. )

**APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY, MISSOURI**
**The Honorable Jon E. Beetem, Judge**

Before Special Division: James E. Welsh, Chief Judge,
Joseph M. Ellis, Judge and Karen King Mitchell, Judge

Natalie A. Vowell appeals from the Circuit Court of Cole County's dismissal of her Petition for Declaratory Judgment and Injunctive relief filed against Jason Kander, in his official capacity as Missouri Secretary of State.

On March 11, 2014, Appellant filed with Respondent's office her declaration of candidacy to serve as the representative in the Missouri General Assembly for the 78th Representative District, seeking to be listed as a candidate in the Democratic primary election to be held on August 5, 2014. Respondent's office accepted, signed, and filed that declaration of candidacy.

On May 6, 2014, Respondent's office sent a letter to Appellant questioning her qualifications to serve as a representative for the 78th District because an examination of voter registration records indicated that she had not been a qualified voter for at least two years prior to the November 4, 2014 election. The letter stated that, if Appellant did not provide Respondent with documentation showing that she had been registered to vote in the State of Missouri for the two years required by Article III, Section 4 of the Missouri Constitution, Respondent would not certify Appellant's name for the ballot.

On May 13, 2014, Appellant filed her Petition for Declaratory Judgment and Injunctive Relief seeking a declaration that Missouri law does not grant Respondent the authority to evaluate a candidate's qualifications and to exclude a candidate's name from the list of candidates certified to appear on a primary election ballot based on such an evaluation. In the alternative, she sought a declaration that Respondent's actions denied her reasonable due process to challenge an adverse decision related to her candidacy. She also sought a temporary restraining order and a permanent injunction prohibiting Respondent from excluding her name from the list of candidates certified to appear on the primary election ballot.

On May 16, 2014, the trial court conducted a hearing on Appellant's motion for a temporary restraining order. Prior to the hearing, the parties agreed to "argue the motion on the concept of judgment on the pleadings." The parties then presented their legal arguments regarding Respondent's authority to determine a candidate's qualifications. As part of his argument, Respondent asserted that there was no justiciable controversy and that Appellant lacked standing to request a declaration regarding Respondent's authority to determine whether Appellant was qualified to serve

2

as a representative because Appellant was not, in fact, qualified to serve as a representative. Appellant responded by arguing that she had standing and that the issue of her qualifications was not before the court. She claimed that the only issue before the court was whether, after a proper declaration of candidacy had been filed and accepted by Respondent, Respondent had the authority to unilaterally investigate and adjudge Appellant's qualifications to serve as a representative.

On May 21, 2014, the trial court dismissed Appellant's petition, concluding that Appellant lacked standing to pursue a declaration regarding Respondent's authority to determine whether Appellant was a qualified candidate because Appellant was not, in fact, a qualified candidate. The court stated, "Because Petitioner is not a qualified candidate, she cannot claim a justiciable controversy exists between her and the Secretary of State and is not entitled to declaratory relief as prayed for in Count I." The court also stated, with regard to the due process claim in Count II of Appellant's petition, that, even if Appellant had standing, due process was satisfied by the provisions of § 536.150, et seq. related to administrative decisions without a hearing. Appellant brings three points on appeal.

In her first point, Appellant contends that the trial court erred in ruling that she lacked standing. "Standing is a question of law, which is reviewed *de novo*." **St. Louis Ass'n of Realtors v. City of Ferguson**, 354 S.W.3d 620, 622 (Mo. banc 2011) (internal quotation omitted). We determine "standing as a matter of law on the basis of the petition along with any other non-contested facts accepted as true by the parties at the time the motion to dismiss was argued." **State ex rel. Christian Health Care of**

3

*Springfield, Inc. v. Mo. Dep't of Health & Senior Servs.*, 229 S.W.3d 270, 276 (Mo. App. W.D. 2007) (internal quotation omitted).

"A declaratory judgment action requires a justiciable controversy." *Mo. Alliance for Retired Ams. v. Dep't of Labor & Indus. Relations*, 277 S.W.3d 670, 676 (Mo. banc 2009). "A justiciable controversy exists where (1) the plaintiff has a legally protectable interest at stake, (2) a substantial controversy exists between the parties with genuinely adverse interests, and (3) that controversy is ripe for judicial determination." *Schweich v. Nixon*, 408 S.W.3d 769, 773 (Mo. banc 2013) (internal quotation omitted). "The first two elements of justiciability are encompassed jointly by the concept of 'standing.'" *Id*.

The term "standing" "means that the parties seeking relief must have some personal interest at stake in the dispute, even if that interest is attenuated, slight or remote." *St. Louis Ass'n of Realtors*, 354 S.W.3d at 622-23 (internal quotation omitted). "To have standing in a declaratory judgment action, the party must have a legally protectable interest at stake." *Gerken v. Sherman*, 276 S.W.3d 844, 853 (Mo. App. W.D. 2009) (internal quotations omitted). "A legally protectable interest means a pecuniary or personal interest directly in issue or jeopardy which is subject to some consequential relief, either immediate or prospective." *Id*. (internal quotations omitted). "A legally protectable interest exists only if the plaintiff is affected directly and adversely by the challenged action or if the plaintiff's interest is conferred statutorily." *St. Louis Ass'n of Realtors*, 354 S.W.3d at 623. "There is no litmus test for determining whether a legally protectable interest exists; it is determined on a case-by-case basis." *Mo. Alliance for Retired Ams.*, 277 S.W.3d at 676.

4

Respondent contends, and the trial court found, that no justiciable controversy existed because Appellant does not satisfy the candidate qualifications for the Missouri House of Representatives set forth by the Missouri Constitution. However, Appellant's qualifications for candidacy were not at issue in the underlying declaratory judgment action. Appellant's petition requests a declaration only as to whether Respondent had the authority, under Missouri law, to unilaterally pass judgment on her qualifications as a candidate, not whether she was, in fact, a qualified candidate. A declaration as to whether Respondent can, under Missouri law, assess a candidate's qualifications for office bears no relation to whether Appellant actually satisfies the candidacy qualifications. Thus, Appellant's qualifications for candidacy are irrelevant to the question of whether Appellant's declaratory judgment action presents a justiciable controversy.

Instead, whether there is a justiciable controversy that Appellant had standing to raise turns on whether Appellant had a legally protectable interest at stake and whether a substantial controversy existed between the parties. Our evaluation of Appellant's petition establishes that both elements are present in this case.

First, official candidacy for public office is most certainly a protectable, legal interest. That is why there are official, statutory procedures for challenging and terminating such candidacy. *See § 115.526* (establishing a procedure for candidates in a primary, general, or special election to challenge declarations of candidacy and qualifications of their opponents); *see also § 115.563.2* (giving the Missouri state house of representatives authority to adjudicate contests based on the qualifications of a candidate for the office of state representative that have not been adjudicated prior to

5

the general election). The petition in this case clearly reflects that Appellant had such a protectable interest at stake. Specifically, Appellant alleges that she timely complied with the requirements for filing her declaration of candidacy for representative of the 78th District with Respondent and that she was subsequently listed as a candidate on Respondent's website. She further asserts that Respondent accepted her paperwork without objection but later sent her a letter asserting that, based upon his assessment of the "qualified voter" requirement, she was not a qualified candidate. That letter indicated that Respondent would not certify Appellant's name to be on the primary ballot unless she established that she had been a "qualified voter" for the previous two years. Thus, the petition clearly alleged Appellant had a protectable interest in appearing on the primary ballot and that her interest was directly and adversely affected by the challenged action, namely Respondent's decision to pass judgment upon her qualifications as a candidate.

Secondly, a substantial controversy exists between Appellant and Respondent with respect to Respondent's authority to evaluate candidates' qualifications. Appellant contends in her petition that § 115.526 provides the exclusive mechanism by which a candidate's qualifications can be adjudicated and that Respondent has no statutory authority to assess a candidate's qualifications. Respondent avers that he has the discretionary authority to determine whether individuals satisfy the candidacy requirements pursuant to Article IV, Section 14 of the Missouri Constitution and § 115.378. This disagreement as to Respondent's authority is sufficient to establish a substantial controversy exists between the parties in this case. Accordingly, the trial court erred in dismissing the case.

6

Ordinarily, where the trial court has improperly dismissed a declaratory judgment action, this Court will reverse the dismissal and remand for further proceedings, allowing the trial court to determine the issue in the first instance. However, when a trial court fails to make a declaration settling rights, as when it dismisses the petition without a declaration, a reviewing court may, in its discretion, make the declaration that should have been made. *Nicolai v. City of St. Louis*, 762 S.W.2d 423, 426 (Mo. banc 1988). If there are no disputed facts and the issue is purely a legal one, as in the case at bar, this Court may undertake to declare the rights and duties of the parties. *Id*. The parties inform us that June 24, 2014, is the "drop dead date" because § 115.125.2 provides that "[n]o court shall have the authority to order an individual or issue be placed on the ballot less than six weeks before the date of the election, except as provided in sections 115.361 and 115.379."[1] Missouri's 2014 Primary Election date is August 5th. Because time is of the essence, we undertake to declare the rights and duties of the parties.

Preliminarily, it is important to understand what this case is and is not about. First, as noted *supra*, it does not involve a determination of whether Appellant is, in fact, qualified to be a candidate for the office she seeks. Secondly, it is likewise not about whether Respondent was correct in his determination that Appellant was unqualified. Those issues are wholly irrelevant to the justiciable controversy presented in Appellant's petition, that being ***whether the Secretary of State has authority to investigate and adjudicate*** whether candidates for office have all the constitutional or statutory qualifications required for the office they seek.

Appellant asserts in her petition that § 115.526 provides the exclusive mechanism by which a candidate's qualifications can be challenged prior to a primary

[1] The referenced sections relate to the death of a candidate.

7

election.  Section 115.526 certainly provides a mechanism by which "[a]ny candidate for nomination to an office at a primary election" can challenge an opponent's qualifications or declaration for candidacy.  **§ 115.526.1**.  Nevertheless, the Missouri Supreme Court has indicated that the language of § 115.526 does not reflect a clear intent on the part of the legislature that this be the exclusive method for contesting a candidate's qualifications.  *State v. Young*, 362 S.W.3d 386, 394 (Mo. banc 2012) (holding that § 115.526 did not supersede the right for a prosecuting attorney or the attorney general to pursue a *quo warranto* action).  Rather, the plain language of section 115.526 simply "permits other candidates to challenge their opponents' qualifications in a private cause of action."  *Id*.  Thus, Appellant's reliance on § 115.526 is misplaced.

Appellant also asserts in her petition that Respondent has no authority under Missouri law to assess a candidate's qualifications prior to a primary election.  Analysis of this contention begins with the proposition that the Secretary of State derives his or her authority to act from statute.  *Beavers v. Recreation Ass'n of Lake Shore Estates, Inc.*, 130 S.W.3d 702, 710 (Mo. App. S.D. 2004).  In claiming that he has the authority to unilaterally assess a candidate's qualifications before a primary election, Respondent relies solely on § 115.387.  As will be seen, Respondent's reliance of this interpretation of § 115.387 is misplaced.

"[T]he primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute."  *State ex rel. Nothum v. Walsh*, 380 S.W.3d 557, 565 (Mo. banc 2012) (internal quotation omitted).  "Absent a statutory definition, the primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute."  *Akins v. Dir. of Revenue*, 303

8

S.W.3d 563, 565 (Mo. banc 2010). "[T]he plain and ordinary meaning of a term may be derived from a dictionary and by considering the context of the entire statute in which it appears." *State ex rel. Burns v. Whittington*, 219 S.W.3d 224, 225 (Mo. banc 2007) (internal citation omitted). "In determining the intent and meaning of statutory language, the words must be considered in context and sections of the statutes in *pari materia*, as well as cognate sections, must be considered in order to arrive at the true meaning and scope of the words." *S. Metro. Fire Prot. Dist. v. City of Lee's Summit*, 278 S.W.3d 659, 666 (Mo. banc 2009) (italics added).

"Section 115.349.1 . . . requires a person wishing to run in a primary election for state office to file 'a written declaration of candidacy in the office of the [Secretary of State][2] by 5:00 p.m. on the last Tuesday in March immediately preceding the primary election." *In re Impeachment of Moriarty*, 902 S.W.2d 273, 273 (Mo. banc 1994). "[T]he declaration should include the candidate's name, residence address, office for which he or she proposes to be a candidate, the party ticket on which he or she wishes to be a candidate, and that if nominated and elected, he or she will qualify." *State ex rel. Thomas v. Neeley*, 128 S.W.3d 920, 925 (Mo. App. S.D. 2004). "The law expressly forbids the printing of any candidate's name on a ballot 'unless his written, signed and sworn declaration of candidacy has been filed in the office of the appropriate election official.'" *In re Impeachment of Moriarty*, 902 S.W.2d at 274 (quoting *§ 115.347*).

---

[2] Section 115.353 mandates that declarations of candidacy for state representatives be filed with the Secretary of State. *State ex rel. Walton v. Blunt*, 723 S.W.2d 405, 406 (Mo. App. W.D. 1986).

9

Section 115.387 states:

Not later than the tenth Tuesday before each primary election, the secretary of state shall transmit to each election authority a certified list containing the name and address of each person who has filed a declaration of candidacy in the secretary's office and is entitled to be voted for at the primary election, together with a designation of the office for which the person is a candidate and the party the person represents.

Respondent contends that the language requiring him to certify that a candidate "is entitled to be voted for" invests him with discretionary authority to investigate and adjudicate whether candidates who file declarations of candidacy are qualified to serve in the office they seek.

The language relied upon by Respondent is, however, stated in the context of expressing the Secretary of State's ministerial duty to certify the names and addresses of candidates for the primary ballot. Indeed, the Missouri Supreme Court has recognized that "[t]he vast majority of the duties assumed by the Secretary of State are ministerial." *In re Impeachment of Moriarty*, 902 S.W.2d at 277; *see also* **State ex rel. Stokes v. Roach**, 190 S.W. 277, 278 (Mo. 1916); **State ex rel. Farris v. Roach**, 150 S.W. 1073, 1076 (Mo. 1912). This is especially true with regard to election related duties. *In re Impeachment of Moriarty*, 902 S.W.2d at 277. In fact, the Missouri Supreme Court has intimated that the Secretary of State's duty to certify a name for a ballot is "purely ministerial."[3] *Farris*, 150 S.W. at 1076.

---

[3] In *Farris*, the relator sought a writ of mandamus to compel the Secretary of State to certify his name as a nominee for presidential elector at large. 150 S.W. at 1073. The relator had been nominated for the elector position by the Democratic Party, and his nomination was timely filed with the Secretary of State. *Id.* However, it was subsequently determined that the relator was unqualified to serve as a presidential elector because he was serving in the state legislature at the time. *Id.* at 1073-74. The Court ultimately issued the peremptory writ upon finding that "regardless of [the relator's] qualifications, it [was] the duty of [the Secretary of State] to certify out [the relator's nomination]." *Id.* at 1077. In doing so, the Court explained that allowing the eligibility of a candidate to be challenged upon mere certification of nomination would establish "a dangerous precedent for the assumption of judicial functions by ministerial officers and central committees." *Id.*

10

Section 115.387 pertains to the ministerial task of certifying the names and addresses of candidates for the ballot. Section 115.387 does not purport to grant the Secretary of State any discretionary power. He or she must certify the name of "each person who has filed a declaration of candidacy in the secretary's office and is entitled to be voted for at the primary election." *§ 115.387*. "The statutes prohibit the printing of the name of a candidate on a ballot unless "his *written, signed and sworn* declaration of candidacy has been filed." *In re Impeachment of Moriarty*, 902 S.W.2d at 274 (emphasis added). Those same statutes say nothing expressly or implicitly about investigating declarants and adjudicating whether they have all the constitutional or statutory qualifications for the office they seek. Rather, consistent with the ministerial nature of the Secretary of State's election duties, in certifying that a person is "entitled to be voted for," § 115.387 simply requires Respondent to certify that filers have timely filed their declaration of candidacy with all the information required. In other words, it is a certification that the declarant's paper work is in proper order and was timely filed.[4]

Indeed, § 115.563.2 states that "[a]ny contest based on the qualifications of a candidate for the office of . . . state representative which have not been adjudicated prior to the general election shall be determined by the . . . state house of representatives." This statute presupposes that the qualifications of a candidate may well not be adjudicated until after the general election, if ever. If the Secretary of State were required to adjudge the qualifications of all candidates prior to certifying their name

---

[4] At oral argument, Respondent asserted that it would only be necessary to review the Secretary's own records to determine compliance with most constitutional or statutory candidate qualifications and that such a review amounts to nothing more than a ministerial act. However, Respondent acknowledged that some candidate requirements could not be verified from those records and that it would be necessary to go beyond the Secretary's records in order to determine all aspects of whether a candidate "is entitled to be voted for." Thus, if the Secretary were vested with authority to investigate and adjudicate candidate qualifications as he asserts, it would, of necessity, mean confirming *all* qualifications and require the Secretary to engage in discretionary decision making.

11

for the ballot, then § 115.563 would serve no purpose because the qualifications of candidates would always have been adjudged prior to the election. "[C]ourts do not presume that the legislature has enacted a meaningless provision." *Edwards v. Gerstein*, 237 S.W.3d 580, 581 (Mo. banc 2007).

As a ministerial officer, the Secretary of State is required to carry out his or her statutory duties to the letter of the law and must treat all persons filing properly executed legal documents with his office equally. *See In re Impeachment of Moriarty*, 902 S.W.2d at 274. "In elections particularly, the legislature has established specific criteria outlining the manner in which candidates declare for office and the time within which such declarations can be received by the Secretary of State." *Id.* at 277. As noted by our Supreme Court in a similar context, the legislature's limiting of the Secretary of State's role in election matters avoids "the assumption of judicial functions by ministerial officers," *Farris*, 150 S.W. at 1077, which in turn minimizes the partisan political mischief that can result from ministerial officers adjudicating candidate qualifications.[5]

In short, the plain language of § 115.387 does not reflect that the legislature intended the Secretary of State to judge a candidate's qualifications. Respondent does not identify any other statutory authority to support his position that he has the power to unilaterally pass judgment on a candidate's qualifications,[6] and we have found none. Accordingly, we hold and declare that Respondent is without authority to refuse to

---

[5] There is certainly nothing in the record before this Court that would even remotely indicate any misconduct on the part Secretary of State in this matter, nor does this Court mean to intimate such in any way.

[6] Respondent does cite to Article IV, Section 14 of the Missouri Constitution, which sets forth the Secretary of State's general authority to "perform such duties . . . in relation to elections . . . as provided by law." However, Respondent does not contend that the constitutional provision, in and of itself, provides him with the authority to determine a candidate's qualifications for office.

12

certify Appellant's name for the primary ballot on the basis of his investigation of and determinations regarding her voter registration history.[7]

_____
Joseph M. Ellis, Judge

All concur.

---

[7] Because our resolution of Appellant's first point sufficiently resolves the case, we need not address Appellant's Point II related to whether the trial court erred in declining to enter an injunction against the Secretary of State and her Point III in which she claims that a durational voter registration requirement is unconstitutional and would violate her rights to due process, free travel, and free speech.