GEORGE F. MANSUR, Relator, v. RICHARD M. MORRIS, County Clerk of Boone County, Missouri, and W. M. DINWIDDIE, Judge of the Circuit Court of Boone County, Missouri.—No. 40076.—196 S. W. (2d) 287.

Court en Banc, September 9, 1946.

*Sears Jayne* for relator.

*Edwin C. Orr* and *Sapp & Miller* for respondents.

ELLISON, J.—This is an original proceeding in prohibition filed in this court by the relator, George F. Mansur, on July 22, 1946, and directed to the respondents Hon. W. M. Dinwiddie, judge of the circuit court of Boone county, and Hon. Richard M. Morris, county clerk of that county. Its objective is to prevent the removal of relator's name as a candidate for the Democratic nomination for magistrate, from the official ballot to be used in the primary election on August 6, 1946. The county clerk put relator's name on the sample ballot along with that of another candidate, Temple H. Morgett. Morgett brought prohibition against the clerk in the Boone county circuit court to keep Mansur's name off the official ballot. That court issued a writ absolute so requiring. Hence the clerk is between two fires, and the respondent circuit judge is joined as a party respondent hereto.

It has been the practice of this court in such cases to make the proceedings rather informal and summary; and to waive the requirements of our rules 1.23-1.25 insofar as adherence thereto would defeat the purposes of the proceeding. They are in a sense sui generis. When suits of this character are brought only a few days before the election, as they usually are, we can only adopt that course or else refuse to entertain them at all, since time is vital because the case would become moot if the election were held before it was decided.

State ex rel. Conran v. Duncan, 333 Mo. 673, 679(2), 63 S. W. (2d) 135, 137(2).

For that reason we held two informal hearings in this case, one on the question whether prohibition, mandamus or certiorari was the proper remedy; and the other on the merits after the present course of proceeding was adopted. The files of the Boone county circuit court were brought up by agreement, and a decision was rendered on July 26, quashing our provisional rule and permitting the decision of the Boone county circuit court to stand, our opinion to follow later. That, of course, resulted in the striking of relator's name from the ballot.

■ Prohibition is only a discretionary writ, not an appeal; but sometimes it is an exigent remedy. We will consider legal questions raised below on the merits to determine whether the tribunal exceeded its jurisdiction. State ex rel. Stone v. Thomas, 349 Mo. 22, 159 S. W. (2d) 600. But we cannot weigh the evidence below on its merits. Yet we must know what the pleadings and evidence (in outline) were in order to understand what the *issues* are. Our sources of information in this case are relator's petition and reply here; his motion to dismiss, motion to strike and third party answer below; the county clerk's return here and below; the circuit judge's return here; and the rule absolute issued below.

■ The office of magistrate is a new county office created by Sec's 1 and 18, Art. V, and Sec. 4, Schedule, Const. 1945, which abolishes the office of justice of the peace. Sec. 18 provides there shall be one magistrate in counties of more than 30,000 and not more than 70,000 inhabitants. Boone county is in that bracket, its population being 34,991 under the last decennial census. The basic question in the case is whether the relator is qualified to hold the office. Sec. 25, Art. V, Const. 1945 provides (italics ours): "Judges of*. . . . magistrate courts shall be qualified voters of this state, and residents of the county. . . . Magistrates (shall be) at least twenty two years of age. Every . . . magistrate shall be licensed to practice law in this state . . . except that persons who are *now* justices of the peace, or who have heretofore been justices of the peace in this state for at least four years, shall be eligible to the office of magistrate without being so licensed."

The word "now" as used in this last sentence ordinarily would mean when the Constitution took effect [28 Words & Phrases (Perm. Ed.), p. 898], which was on March 30, 1945. But the enforcing statute, Senate Bill No. 207, sec. 3; Mo., R. S. A. sec. 2811.103 fixes the date as February 27, 1945, the day of the election at which the new Constitution was adopted by the electors of the State. At any rate, these undisputed facts were before the trial court. Relator was and is qualified for the office of magistrate as to age, residence and suffrage. But he is not a lawyer and had not theretofore been a justice of the

peace for four years. His eligibility depended on whether he was a justice of the peace ▮▮▮ "now", as the Constitution put it, that is on February 27 or March 30, 1945, whichever it be. He was at least a de facto justice of the peace by reason of the following further evidence, from which the circuit court found he was not eligible for the office of magistrate.

Under Sec. 2522 [references to statutes are to R. S. 1939 and Mo. R. S. A.] Columbia township in Boone county is entitled to three justices of the peace. At the general election in 1942 that number of justices were elected for a term of four years each, expiring in 1946, under Sec's 2522 and 2525, they being: the aforesaid Temple H. Morgett, relator in the prohibition proceeding below, who had theretofore been a justice of the peace for four years; David V. Bear; and M. F. Thurston, Jr. Thereafter, Morgett and Bear were inducted into the Armed Forces of the United States without resigning their said offices, and Thurston resigned on January 2, 1943. George S. Starrett was appointed by the county court as his successor until the next general election, in 1944, under Sec. 2527. At the primary and general elections in August and November, respectively, 1944, Starrett ran to succeed himself, and Mansur, the relator here, also ran. Both were nominated and elected as non-competing candidates for justices. of the peace, apparently on the assumption that there were two vacancies to be filled. Both were commissioned and have served since.

This was long after the decision of State ex inf. McKittrick v. Wilson, 350 Mo. 486, 166 S. W. (2d) 499, 143 A. L. R. 1465, rendered on December 7, 1942, and hereinafter construed. It is respondents' contention that under that decision Morgett and Bear had not abandoned their offices for the term ending in 1946, by entering and serving in the Armed Forces of the United States, and that their absence on such service did not render their offices vacant. In consequence, they assert there was only one vacancy in the three offices of justice of the peace to be filled at the 1944 election, that being the office formerly held by Thurston, who resigned, and which Starrett had been appointed to fill until that election. And since Starrett received the greater number of votes in both the primary and general elections that year they maintain he alone was validly elected; and that relator's election was void, since both the other offices of justice of the peace were already filled.

It appears that the question of the qualifications of the instant relator (Mansur) for the office of magistrate had been mooted early this year. For the petition of Morgett in the circuit court (the allegations of which that court found to be true), charged that in the Columbia Daily Tribune of April 30, 1946, Mansur announced he would withdraw if the Attorney General of Missouri ruled he was ineligible for the office of magistrate. Morgett's petition further alleged that the question was submitted to the Attorney General in

May, 1946, upon a statement of facts to which Mansur agreed; and that on or about July 6, 1946, the Attorney General's Department gave a written opinion to the prosecuting attorney of Boone county that he was ineligible. A copy of that opinion has been filed in this cause. It shows the questions passed upon were whether Mansur was a de jure or a de facto justice of the peace; and if the latter, whether he was eligible as a candidate for magistrate under the constitutional provision and statute earlier set out herein.

The petition of relator Morgett below further alleged that after the Attorney General had ruled Mansur was ineligible, he (Morgett) notified the county clerk that Mansur's name had been erroneously printed on the sample ballots for the primary election as a candidate for magistrate, and requested the clerk to correct the error by removing Mansur's name from the official ballots for the primary election under Sec. 11558, which requires the county clerk to "correct any errors or omissions" in the sample ballots. On July 17 the county clerk refused, and Morgett thereupon brought prohibition in the Boone county circuit court on July 18, resulting in the issuance of the rule absolute, aforesaid.

Relator's third party answer and return in the circuit court denied the above allegations in Morgett's petition and affirmatively alleged that at the time of his election in 1944 only one justice of the peace was serving in Columbia township with a population of 21,457, or more; that there was great need of another justice of the peace; that he believes additional justices would have been appointed by the county court under Sec. 2524 if he had not served as such; that he was elected before the decision of the Wilson case, supra [in that, he is mistaken]; that justices Morgett and Bear actually abandoned their respective offices, and left no one qualified to act for them, and no court rooms or dockets; that both of them returned to Columbia township in 1945, and neither collected any emoluments from their said offices, or made any complaint that relator (Mansur) was usurping them, and both failed to institute any contest of any kind; that Morgett is estopped to impeach the records in the office of the county clerk showing he (Mansur) was elected justice of the peace in 1944. The foregoing is a sufficient statement of the factual issues.

Relator Mansur's broadest legal contention here is that Judge Dinwiddie exceeded his jurisdiction in entertaining Morgett's prohibition suit in the circuit court, because prohibition does not lie to control ministerial functions.[1] He points out that the only statute authorizing the county clerk to correct ballots for primary elections is Sec. 11558,[2] which provides: "the county clerk shall correct any errors and omissions in the (sample) ballot, cause the same to be printed and

---

[1]Bash v. Truman, 335 Mo. 1077, 1080(2), 75 S. W. (2d) 840, 843(5).
[2]Laws Mo. 1943, pp. 526, 536; Laws Mo. 1944 (Ex. Sess.), pp. 24, 25.

distributed, as required by law, in the case of ballots for the general election." And he maintains that duty is purely ministerial and extends only to clerical errors, such as a wrong or misspelled name, or the listing of a candidate for the wrong office or under the wrong party label. Thence he argues conversely that the clerk has no power to correct any other errors; notwithstanding Sec. 11550 requires a declaration of candidacy to state that if the candidate is nominated and elected "he will qualify"; and the clerk may know he is ineligible and cannot qualify.

It will be observed that the above provision in Sec. 11558, concerning the county clerk's duty to correct errors and omissions in the sample ballots for a primary election, says it shall be done as required by law in the case of ballots for general elections. We so construe the statute, just as if the word "and" had been inserted between the words "ballot" and "cause", instead of a comma. The statute dealing with the correction of ballots for general elections is Sec. 11599. It provides: "Whenever it shall appear by affidavit that an error or omission has occurred in the publication of the names or description of candidates nominated for office, or in the printing of the ballots, the circuit court of any county, or the judge thereof in vacation, or if the circuit judge is then absent from the county, a judge of the county court, may, upon application by any elector, by order, require the clerk of the county court to correct such error, or to show cause why such error should not be corrected."

This section, as will be seen, uses the same words (in the singular) "error or omission", as appear in Sec. 11558, supra; and if any difference it uses them more restrictively, for they are qualified by the adjective phrase "in the publication of the names or description of candidates nominated for office, or in the printing of the ballots." But there is another difference between the two sections. In Sec. 11599 the words "error or omission" are preceded by the adverbial clause "whenever it shall appear by affidavit that an"; and following them the section goes on to provide a summary judicial or quasi-judicial method of compelling the county clerk "by order" to correct such errors or show cause why it should not be done. Sec. 11558 omits that provision, but it is apparent that both sections contemplate the same kind of errors and omissions.

Now the first question to be determined is what *kind* of errors are meant, and the second is whether the county clerk's duty to correct them is discretionary, or merely ministerial as relator Mansur contends. To begin with, the word "error" is a stronger word than "mistake" ▓ or "irregularity", particularly in legal parlance, and it has a wide application, 15 Words & Phrases (Perm. Ed.), pp. 113-126. As used in Sec. 11558 it can hardly be construed to require the county clerk to correct errors of which he is ignorant, or when the question is doubtful and no complaint is made. But how do

matters stand when a complaint (though informal) has been made, as here, backed up by an opinion of the Attorney General under Sec. 12899, notwithstanding Sec. 11558 does not prescribe a procedure for its enforcement?

There appear to be no precedents on that question, arising under Sec. 11558. But there are at least two under Sec. 11599. In the Bowers case,[3] a foundation banc decision rendered in 1892 soon after the adoption of the Australian ballot system in this state, the controversy involved an election contest. The contestants were seeking to invalidate a whole election because the county clerk had failed to correct an error in the ballots, made by placing thereon the names of candidates of a Union-Labor party, which names had not been properly certified to the county clerk, and were not entitled to go on the ballot because that party had not cast 3% of the total vote at the last general election, as required by another statute. Certainly that was not a mere clerical question.

The decision held the consequences of a proposed interpretation of a statute should be considered in arriving at its intent, and ruled: that the election was not void; that the errors complained of could have been corrected by the county clerk under Sec. 11599 (then Sec. 4778) if complaint had been made before the election; that the purpose of the statute was to protect the "unwary voter (from the) risk of losing the right of suffrage," and to furnish an adequate method of eliminating errors from the ballots arising from many sources, since the Australian ballot system requires the ballots to be made up and furnished exclusively by the county clerk, whereas formerly candidates had furnished their own.

The Bowers decision makes one other observation, which we shall refer to later in another connection. It says (quoting approximately) that there is a substantial difference in principle and effect, between admitting and excluding the names of candidates from the ballot, because the practical consequence of erroneously adding a name to the ballot is merely to enlarge the voter's range of choice, which the voter would be entitled to do anyway by writing in the name of a candidate.

Another adjudication under Sec. 11599 (then Sec. 5896) was the Nance case,[4] decided in 1913. It was an appeal from an election contest involving pretty much the same kind of issues as the Bowers case. The contestant claimed the county clerk had wrongfully placed the name of the contestee on the general election ballot as the nominee for sheriff of both the Republican and Progressive parties; and that the Progressive party nomination as shown on the ballot was illegal because made by a nominating petition signed by electors instead of by a primary election or the party central committee, or a convention.

---

[3]Bowers v. Smith, 111 Mo. 45, 55-6, 20 S. W. 101, 103-4, 16 L. R. A. 754, 33 Am. St. Rep. 491.
[4]Nance v. Kearbey, 251 Mo. 374, 384-7, 158 S. W. 629, 631-3(4).

The decision denied relief because no objection had been made before the election, as provided in Sec. 11599. But it observed that in the very nature of things under our Australian ballot system which requires the county clerk alone to make up and furnish the ballots, some pre-election plan for correcting official errors of *judgment* was necessary to avoid foisting those errors on the voters and thereby disfranchising them. The opinion questioned whether an issue of the kind stated above could be tried in an election contest, and extolled the Bowers decision,[3] saying it had been cited with approval in other jurisdictions more than any other election case ever decided by this court.

The power to place the name of a candidate on the election ballot or withhold it therefrom, is expressly given to the county clerk before the general election in other circumstances. It is provided in Sec. 11540 that when a party central committee has issued a certificate of nomination for a county office under Sec. 11539,[5] to fill a vacancy on the party ticket previously nominated, and objections thereto are filed, the county clerk shall pass upon the objections and his decision shall be final in the first instance, but subject to "an order" to the contrary, made in a summary judicial or quasi-judicial review on application of any interested party.

However, it was held in the Farris case,[6] a mandamus proceeding decided in 1912, that the Secretary of State [corresponding to the county clerk here] had no power under Sec. 11540, supra, to remove the relator's name from the general election ballot as a nominee for presidential elector-at-large, on the ground that he was *ineligible*. But the reasoning of the decision is inapplicable here. No objections to the relator's nomination had been filed as the statute required, and the opinion held that in the absence of such objections the Secretary of State's duties were purely ministerial. [The decisions say that in cases within this section the remedy prescribed by it is exclusive.[7]] This Farris case further held that since the relator had already been nominated and was a candidate there was no *vacancy* to be filled, and then went on to say: "So far as the law is concerned, the people may nominate and vote for an ineligible candidate at their risk"; and that the question of his eligibility could be raised when he sought to take office, if elected.

 In addition to relator Mansur's contention which we have been discussing and shall rule on presently—that prohibition did not lie in the circuit court because the county clerk's duties under Sec. 11558 were purely ministerial—he also raises the point made in the quotation from the Farris case, just set out above, namely that prohibition did

---

[5]See Laws Mo. 1941, pp. 354, 355; p. 365, sec. 1; Laws Mo. 1943, pp. 526, 535; Laws Mo. 1944 (Ex. Sess.), p. 22. The sections are confused as to subject matter and numbers. We only cite them generally.

[6]State ex rel. Farris v. Roach, 246 Mo. 56, 150 S. W. 1073.

[7]Nagel v. Barrett, 353 Mo. 1049, 1055, 186 S. W. (2d) 589, 592.

not lie below because Morgett had another available remedy. He says that if he (Mansur) should be nominated the question of his eligibility could be raised by a statutory contest or by quo warranto. But Sec. 11588 governing contests of primary nominations, by its own terms only permits a challenge of the "correctness of the count and returns": it does not authorize a challenge of the eligibility of the contestee. And while Sec. 11632 governing contests of the election of county and municipal offices is less definite, yet it, also, appears to proceed on the theory that one candidate or another was elected and is entitled to the office, and the contest is for the purpose of determining which one was elected. The general rule is that the eligibility of candidates is not a competent issue in an election contest, as queried in the Nance case, supra, 20 C. J., p. 217, sec. 275; p. 225, sec. 289; 29 C. J. S., p. 361, sec. 249; p. 375, sec. 266.

And as the Bowers case[8] holds, a further "consequence" of relator's interpretation of Sec. 11558 should be considered. It is the general rule,[8] and has been held four times in this state,[9] that when an *ineligible* candidate is nominated or elected the whole election is void, because the winner must receive a majority or plurality, whichever the statute requires, of the whole number of legal votes cast. Candidates receiving the next highest or any lower number of votes cannot be declared elected. And as a result, if an ineligible candidate were chosen the "unwary voters" (as the Bowers case puts it) would be deprived of their right of suffrage—the very thing that Sec's 11558 and 11599 seek to avert. Evidently that contingency was not considered when the Bowers case held that the erroneous addition of a candidate's name to the ballot does no serious harm, and merely enlarges the voter's range of choice. And the same may be said of the statement in the Farris case (246 Mo. l. c. 71, 150 S. W. l. c. 1077) that the people "may nominate and vote for an ineligible candidate at their own risk." They may, of course, vote for such a candidate, but legally they cannot nominate him.

 We return now to the initial question, whether prohibition was the proper remedy below, and whether Judge Dinwiddie abused or exceeded his jurisdiction by entertaining it. We reserved our ruling on that question because it seemed necessary to show first: what the consequences would have been if there had not been judicial interference of some kind; and that Sec. 11558 does not expressly provide any remedy for the correction of "errors and omissions" in ballots for a primary election, as do Sec's 11540 and 11599 before general elections—although such action is equally necessitous in both cases. And

---

[8]20 C. J., p. 118, sec. 120; p. 207, sec. 267; p. 224, sec. 289; 29 C. J. S., p. 169, sec. 119; p. 353, sec. 243; p. 375, sec. 266.
[9]State ex inf. Atty. Gen. v. Cameron, 342 Mo. 830, 838(2), 117 S. W. (2d) 1078; State ex rel. Neu v. Waechter, 332 Mo. 574, 580(4), 58 S. W. (2d) 971, 975; Sheridan v. St. Louis, 183 Mo. 25, 31(3), 81 S. W. 1082, 1083-6, 2 Ann. Cas. 480; State ex rel. Atty. Gen. v. Vail, 53 Mo. 97, 111, 115.

it should be further remembered that the remedy provided by the latter sections is simple, prompt and nontechnical; that it can be administered by a mere "order"; and that in vacation it may be done by a judge alone, or even by a judge of the county court under Sec. 11599 in some instances. All this manifests a legislative intent.

And unless we assume the failure of Sec. 11558 to provide a procedure for the correction of errors in primary ballots means such corrections cannot be enforced (which assumption we cannot make) then it follows that the remedy under that section also should be nontechnical. Hence we cannot permit ourselves to be impaled on narrow distinctions, between prohibition, mandamus, certiorari and injunction. Ordinarily mandamus is the proper remedy to compel the discharge of ministerial functions, but not to control the exercise of discretionary powers. State ex rel. Richardson v. Baldry, 331 Mo. 1006, 1011(2), 56 S. W. (2d) 67, 69-70(2). The decisions reviewed in this opinion compel the conclusion that the duties of the county clerk under Sec. 11558 are not purely ministerial; and that he has a measure of discretion.

But in either event he cannot usurp judicial functions. Yet in this case he has, in effect, assumed to decide that relator Mansur is eligible for the office of magistrate, and that his name as a candidate therefor should go on the primary ballot—notwithstanding the decision of State ex inf. McKittrick v. Wilson, supra [350 Mo. 486, 166 S. W. (2d) 499, 143 A. L. R. 1465] decided in 1942, and the opinion of the Attorney General rendered on the specific facts involved here. This is not meant as a criticism. He probably took that position in order that an adjudication of the question might be obtained. But we are convinced that under the foregoing facts prohibition was the proper remedy below.[10] That being true Judge Dinwiddie did not exceed his jurisdiction in entertaining prohibition; and at most his ruling below on the merits would only be error.

But we shall not leave our conclusion clouded in doubt, for two other legal questions are involved. We think the decision in the Wilson case cited in the last paragraph is controlling and does hold that public officers who are inducted into the Armed Forces of the United States either by draft or voluntary enlistment, do not forfeit their offices; and that their enforced absence therefrom does not constitute an abandonment thereof. It is true the opinion in that case mentioned the fact that the circuit clerk there involved had a deputy and returned to his office from time to time during the period of his military service. But those facts were mentioned with reference to Sec. 13284, a statute pertaining to vacancies in that particular office.

---

[10]State ex rel. Stone v. Thomas, supra, 349 Mo. l. c. 26(2), 159 S. W. (2d) l. c. 602(3); State ex rel. Bates v. Remmers, 325 Mo. 1175, 1178(1), 30 S. W. (2d) 609, 611(1).

434

And even if the ruling be regarded as applying to public offices in general, it does not mean that unless the officer had a deputy or returned to his office from time to time, it would be forfeited by his absence. He might not have a deputy, or his location and duties might be such that he could not return.

The opinion in the Wilson case as a whole speaks broadly, and quotes a statement from Mechem on Public Officers that (italics ours) "generally it is a *willful refusal to perform* the duties of an office which works a forefeiture." In the instant case there were some allegations in relator Mansur's third party answer below that the two warrior-justices of the peace who did not resign, had returned to Columbia township in the year 1945; and that they made no effort to resume their offices or to collect the emoluments thereof. If those allegations were supported by evidence, and the facts were more fully developed as to time, acts, etc., they may have made out a case of voluntary abandonment. But the circuit court necessarily ruled that issue against relator, and it would not be our province in prohibition to weigh the evidence if it were here.

 The other question is this. Is the provision in Sec. 25, Art. V, Const. 1945, that "persons who are now justices of the peace . . . shall be eligible to the office of magistrate" satisfied if the candidate at the time specified was only a de facto justice of the peace? The Attorney General's opinion was directed to that point, and concluded it was not. We think that conclusion is correct. The rule treating the official acts of a de facto officer as valid, is for the benefit of the public and persons who have dealt with him as an officer, and not for the personal benefit of the de facto officer. 43 Am. Jur., p. 224, sec. 470; 46 C. J., p. 1053, sec. 366, p. 1061, sec. 378; In re Estate of Henry Berger, 152 Mo. App. 663, 670-1, 133 S. W. 96, 99(2).

 Another and broader reason why we should not interfere is this. Prohibition is a discretionary writ. And since it appears that relator Mansur is not eligible to the office of magistrate, we should not assist him into the office for that reason alone, and regardless of other considerations. State ex rel. Snyder v. Newman, 91 Mo. 445, 451, 35 S. W. 849. The Farris case, supra,[6] distinguished this Snyder decision on the ground that the ineligible candidate might not be elected. But we disagree with that reasoning and think it should not be followed. For, on the other hand and as already pointed out, he might be elected, in which case the whole election would be invalidated. And again, this case is not one where quo warranto would lie. It seeks to determine his eligibility for the office of magistrate: not to oust him from the office of justice of the peace which he is holding de facto. To wait until he had been elected magistrate, and then to remove him from that office by quo warranto, would be against the public interest and the rights of the voters.

We should state our reasons for holding that relator Mansur was a justice of the peace de facto. It has been said that the same office cannot be occupied at the same time by two persons, one an officer de facto and the other an officer de jure. State ex rel. School District v. Orrick, 145 Mo. 305, 312(1), 46 S. W. 948, 950. And we have held here that the two of the three justices of the peace in Columbia township who went to war did not thereby vacate their said offices, in consequence of which only the third office was open at the 1944 election, that being the office validly occupied by Starrett, who was re-elected. So all three offices were occupied by a de jure incumbent. This may seem inconsistent with the doctrine stated in the Orrick case. But Mansur also was elected in 1944, on the mistaken theory that there were two places to be filled. That election was enough to give him color of title to the office he occupied. Alleger v. School District (Mo. App.), 142 S. W. (2d) 660, 663(5). We so rule in order that this opinion may not cast any cloud on the validity of his supposed official acts in office.

For the reasons stated we hold our provisional rule in prohibition was improvidently issued and should be quashed. It is so ordered. *Hyde, Gantt, Leedy* and *Tipton, JJ.,* concur; *Douglas, J.,* not sitting; *Clark, C. J.,* dissents.