STATE of Missouri ex rel. James A. THOMAS, Relator/Respondent,

v.

Donna NEELEY, Taney County Clerk, Respondent,

and

Sandra Williams, in her capacity of City Clerk of Branson, Missouri, Respondent–Appellant.

No. 26108.

Missouri Court of Appeals, Southern District, Division One.

March 23, 2004.

Daniel R. Wichmer, Branson, for appellant.

Stephen Bradford, Styron Law Firm, Branson, for relator–respondent.

JAMES K. PREWITT, Judge.

Sandra Williams ("City Clerk"), in her capacity as the City Clerk of the City of Branson, Missouri, appeals from an amended peremptory writ of mandamus and final judgment that ordered her "to immediately certify the name of Jim Thomas as a candidate for Alderman–Ward I of the City of Branson, Missouri at the election to be held on April 6, 2004." In that same judgment, Donna Neeley ("County Clerk"), in her capacity as Taney County Clerk, was ordered to place Thomas' name on the ballot as a candidate for alderman for the same election.

City Clerk challenges the trial court's judgment with two points on appeal, asserting that the trial court erred as a matter of law in entering the peremptory writ of mandamus in Thomas' favor because there was no unequivocal ministerial or statutory duty for City Clerk to certify Thomas as a candidate and because Thomas failed to present evidence that he met the residency requirement stated within § 79.070, RSMo 2000.

## Facts

On October 7, 2003, Thomas registered to vote in Taney County. A few days earlier, he had contacted the Stone County clerk's office to disenroll from Stone County's voter rolls. When personnel in County Clerk's office attempted to identify Thomas' proper polling place in Taney County, it was determined that the address Thomas listed on his voter registration form, 3431 West Highway 76, in Branson, Missouri, was a business. Thomas had already been registered as a voter in Taney County when that determination was made.

Although County Clerk never rejected Thomas' voter registration, she visited the property, which is a hotel called Lodge of the Ozarks, Inc., owned by a corporation of which Thomas owns seventy-one percent. Based on information from Thomas that he used room 465 of the hotel as his residence, County Clerk checked the room and found no personal effects—toothbrush, razor, clothes, etc. County Clerk did not look elsewhere on the property, such as Thomas' office. According to Thomas, on the three or four nights a week he stays there, he uses room 465, and has a "standing order" for that room, although he was not opposed to the hotel management renting the room if he was not staying there on a particular night. Thomas indicated that he showered and kept clothing "somewhere besides that room."

On January 16, 2004, Thomas completed a "Declaration of Candidate for Nomination" form, in which he "announced" himself as a candidate for the office of Alderman–Ward I for the general election to be held April 6, 2004. Within this form, Thomas designated himself as a resident and registered voter of Taney County, residing at 3431 West Highway 76 in Branson, Missouri. The notarized form included an affidavit in which Thomas affirmed that the information contained therein was true. City Clerk signed the form twice, once as the "election official or other officer authorized to administer oaths" and a second time within the affidavit portion of the form as the "officer accepting declaration."

According to City Clerk, she was aware that the address Thomas used on the form was a business, which made her question whether Thomas met the residency requirement of § 79.070, RSMo 2000, which provides:

No person shall be an alderman unless he or she is at least twenty-one years of age, a citizen of the United States, and an inhabitant and resident of the city for one year next preceding his or her election, and a resident, at the time he or she files and during the time he or she serves, of the ward from which he or she is elected.

City Clerk proceeded to investigate the matter. She "talked to the County" and was informed that Thomas had registered to vote in Taney County on October 7, 2003; she spoke with County Clerk, and they discussed County Clerk's own investigation of Thomas' alleged residence described above; she contacted the Secretary of State's Office, and someone there told her that she was "the election authority as far as certifying"; and she contacted the clerk's office in Stone County and verified that Thomas notified Stone County officials that he was changing his address "and was going to register in ... Taney County." Additional information from Stone County showed that Thomas had last voted in Stone County in November, 2002.

City Clerk spoke with Thomas on January 27, 2004, about her concern and asked him how long he had resided at the hotel; Thomas' initial response was that he had resided there since October, 2003. Upon

further questioning, however, Thomas stated that he meant that he had registered to vote in October, 2003, but had "resided [at the hotel] for 12 years."

As the conversation between City Clerk and Thomas continued, she told him that she needed something to show that he met the residency requirement, such as a change of address form, utility bill, or cable bill. Thomas informed City Clerk that he would speak with his attorney and bring her an affidavit. City Clerk insisted that she needed more than that, but Thomas said, "[City Clerk], I'll get an affidavit to you." Thomas did provide an affidavit that afternoon, attesting that he had been an inhabitant and resident of Branson "for more than one year continuously next preceding April 6, 2004," and a resident of the appropriate ward currently and at the time of filing for the office of alderman. Within the affidavit, Thomas listed 3431 West Highway 76 as his mailing address and residency.

City Clerk determined that although Thomas was "not in arrears for any unpaid monies or fees to the City of Branson[,]" there was "no way that [she] could certify that [Thomas] had met the one-year residency requirement." City Clerk informed Thomas that she "had no ability to certify a document to the County Clerk saying that he was qualified." Thomas was told of City Clerk's determination that he was ineligible for the April 6, 2004, election on January 27, 2004.

Thomas filed a petition in mandamus on February 10, 2004, and the circuit court issued a preliminary order in mandamus that same day. On February 17, 2004, the court granted a motion adding City Clerk as a respondent; accepted Thomas' filing of a first amended petition, and executed a preliminary order in mandamus, directing County Clerk, City Clerk, and the City of Branson, to file pleadings to Thomas' petition in mandamus.

A hearing was held on the matter on February 20, 2004, and a peremptory writ of mandamus filed that same day. Although City Clerk filed a notice of appeal on February 23, 2004, the trial court filed an amended peremptory writ of mandamus and final judgment on February 26, 2004, which reflected the court's intention for the peremptory writ of mandamus to be final for the purposes of appeal by adding the sentence, "This order is a final judgment under Rule 74.01 for purposes of appeal."

Within the amended peremptory writ of mandamus, the court found that Thomas had "timely filed his written, signed, and sworn declaration of candidacy for Alderman–Ward I of the City of Branson, Missouri[,]" and that his name "was not certified to the Taney County Clerk as a candidate" for the alderman office for the April 6, 2004, election. City Clerk was "ordered to immediately certify the name of Jim Thomas as a candidate for Alderman–Ward I of the City of Branson, Missouri, at the election to be held on April 6, 2004." County Clerk was "ordered to immediately place the name of Jim Thomas on the ballot as a candidate for Alderman–Ward I of the City of Branson, Missouri, at the election to be held on April 6, 2004[.]" Only City Clerk has appealed, County Clerk has not, but has communicated to this Court that she agrees with City Clerk's brief.

**Discussion**

*Standard of Review*

An order awarding a peremptory writ of mandamus is appealable. *State ex rel. Selsor v. Grimshaw,* 762 S.W.2d 868, 869 (Mo.App.1989). On appeal, we review the grant of a writ of mandamus under an abuse of discretion standard. *Bergman v.*

*Mills,* 988 S.W.2d 84, 88 (Mo.App.1999). Under that standard, we will reverse the trial court's ruling only if it is so arbitrary and unreasonable as to shock the sense of justice and indicates a lack of careful consideration. *Id.*

 Mandamus is the appropriate action when seeking to require the performance of an official of a ministerial act. *Hunter v. County of Morgan,* 12 S.W.3d 749, 764 (Mo.App.2000). A writ of mandamus will lie to compel a public official to do that which he or she is obligated by law to do and undo that which he or she was prohibited by law from doing. *See State ex rel. Burns v. Gillis,* 102 S.W.3d 66, 68 (Mo.App.2003). Therefore, a writ of mandamus cannot compel the performance of a discretionary act. *Id.*

 A ministerial act is one that law directs the public official to perform upon a given set of facts, independent of how the official may regard the propriety or impropriety of performing the act in any particular case. *Jones v. Carnahan,* 965 S.W.2d 209, 213 (Mo.App.1998). A discretionary act is one that requires the exercise of reason in determining how or whether the act should be performed. *Id.* A writ of mandamus will only issue when there is an unequivocal showing that the public office failed to perform a ministerial duty imposed by law. *Id.*

 The party seeking a writ of mandamus, the relator, must show a clear and specific right to the relief sought. *Selsor,* 762 S.W.2d at 869. The relator must prove that he has a clear, unequivocal, specific, and positive right to have the official perform the act demanded, and the remedy will not lie if the right is doubtful. *Jones,* 965 S.W.2d at 213. To determine whether the right to mandamus is clearly established and exists currently, the court examines the statute under which the relator claims the right. *Id.*

 We also note that when neither party requests specific findings of fact or conclusions of law, all fact issues are considered to have been found in accordance with the result reached by the trial court. *Edmunds v. Sigma Chapter of Alpha Kappa,* 87 S.W.3d 21, 29 (Mo.App.2002). Further, the judgment will be upheld on any reasonable theory supported by the evidence. *Weatherwax v. Redding,* 953 S.W.2d 162, 167 (Mo.App.1997). In our review, we are mindful of the trial court's opportunity to have judged the credibility of the witnesses and we accord due deference in that regard. *Lewis v. Gibbons,* 80 S.W.3d 461, 466 (Mo.banc 2002).

With the above standard of review in mind, we turn now to the specific points raised on appeal by City Clerk.

*Point I—No unequivocal showing of a ministerial or statutory duty*

 Within her first point, City Clerk asserts that the trial court erred as a matter of law in entering the peremptory writ of mandamus because there was no unequivocal showing that City Clerk failed to perform a ministerial or statutory duty. City Clerk points to comments made by the trial judge that did not make their way into the final judgment in which the trial judge indicated that he was going to order that Thomas' name be placed on the ballot, but further stated:

Now, in doing that, I make no comment on whether he's a likable or unlikable fellow, because I don't know anything about him. But I do think this: every dog has got—has got one bite. And I think that what we've got here is that we've got a mess in these statutes and very little guidance on how to do it. And I'm convinced if, of nothing else, that after three hours, if I'm having a hard time making a determination of it,

it has to be impossible for a County Clerk to do it.

The trial judge also stated that the statutes were "ambiguous, and the ambiguity must be resolved in favor of [Thomas]."

Under § 79.320, RSMo 2000, the city clerk of a fourth class city (Branson's classification) has duties and a term of office fixed by ordinance. The statute goes on to list particular duties, including keeping a journal of the proceedings of the board of aldermen, maintaining records and papers belonging to the city, serving as general accountant, and being empowered to administer official oaths and oaths to persons certifying to demands or claims against the city.

Under the ordinance within the City of Branson municipal code that specifies the appointment, duties, and term of the city clerk, City Clerk "[s]hall be the Election Authority for the city and shall perform all duties required." Branson Municipal Code § 115.050 (2003).

Under Missouri statute, § 115.055, RSMo 2000, "[e]ach election authority and its designated employees may administer oaths and perform all other duties necessary to register voters and conduct elections."

Section 115.346, RSMo 2000, states: "Notwithstanding any other provisions of law to the contrary, no person shall be certified as a candidate for a municipal office, nor shall such person's name appear on the ballot as a candidate for such office, who shall be in arrears for any unpaid city taxes or municipal user fees on the last day to file a declaration of candidacy for the office." Section 71.005, RSMo 2000, provides that "[n]o person shall be a candidate for municipal office unless such person complies with the provisions of section 115.346, RSMo, regarding payment of municipal taxes or user fees." We recall from the facts that City Clerk specifically noted that Thomas was not in arrears on any such taxes or fees that would disqualify his certification as a candidate under these statutory provisions.

Under § 115.347.1, RSMo 2000, "[n]o candidate's name shall be printed on any official ballot unless his written, signed and sworn declaration of candidacy has been filed in the office of the appropriate election official as provided in this subchapter." Here, Thomas filed the above-mentioned declaration of candidacy in the City Clerk's office, who is, by ordinance, the election authority for the City of Branson. Section 115.347.2, RSMo 2000, provides that "[a]ny person filing a declaration of candidacy containing a false or forged signature or containing the name of a nonexistent or fictitious person shall be guilty of a class one election offense."

Section 115.349, RSMo 2000, sets out the time for filing a declaration of candidacy and the form of that declaration. Although it speaks to declaration of candidacy for nomination in a primary election, the declaration should include the candidate's name, residence address, office for which he or she proposes to be a candidate, the party ticket on which he or she wishes to be a candidate, and that if nominated and elected, he or she will qualify. § 115.349.3, RSMo 2000. Under § 115.349.1, RSMo 2000, "no candidate's name shall be printed on any official primary ballot unless the candidate has filed a written declaration of candidacy in the office of the appropriate election official by 5:00 p.m. on the last Tuesday in March immediately preceding the primary election." There is no dispute here that Thomas' "Declaration of Candidate for Nomination" contains the information outlined in § 115.349.3, RSMo 2000, and was timely with respect to the April, 2004 election.

Although outlined above, § 79.070, RSMo 2000, provides:

No person shall be an alderman unless he or she is at least twenty-one years of age, a citizen of the United States, and an inhabitant and resident of the city for one year next preceding his or her election, and a resident, at the time he or she files and during the time he or she serves, of the ward from which he or she is elected.

City Clerk draws our attention to *Mansur v. Morris,* 355 Mo. 424, 196 S.W.2d 287 (1946). In that case, a court issued a writ of prohibition against a county clerk requiring that the clerk keep Mansur's name off the ballot. *Id.* at 288. Mansur himself, however, also filed a petition for a writ of prohibition to prevent the removal of his name from the ballot. *Id.* The Court considered a statutory provision that provided that when a party central committee has issued a certificate of nomination for a county office under a separate specific statutory provision, to fill a vacancy on the party ticket previously nominated, and objections thereto are filed, the county clerk shall pass upon the objections and his decision shall be final in the first instance, but subject to an order to the contrary, made in a summary judicial or quasi-judicial review on application of any interested party. *Id.* at 292–93 (internal quotations omitted).

The Court noted a case in which it was held that the election authority had the power under the above-referenced statute to remove a relator's name from a ballot as a nominee for presidential elector-at-large, on the ground that the potential nominee was ineligible. *Id.* at 293. The Court distinguished that case by noting that no objections had been filed, as was true in the *Mansur* case. *Id.* The conclusion of the Court's analysis in the *Mansur* case was that the election authority's duty involving determining the eligibility of a potential candidate were discretionary. *Id.* at 294. However, the Court determined that prohibition was the proper remedy as the election authority usurped judicial function by determining Mansur was eligible for office. *Id.*

City Clerk argues that she had the duty, as the election authority for the City of Branson, to determine the eligibility requirements of Thomas and other candidates for city offices, following the reasoning of *Mansur.* We disagree.

Section 115.015, RSMo 2000, provides that "[t]he county clerk shall be the election authority, except that in a city or county having a board of election commissioners, the board of election commissioners shall be the election authority." There is no dispute that neither the City of Branson nor Taney County has a board of election commissioners.

Under § 115.023, RSMo 2000, the election authority is to conduct all elections. Section 115.051.1, RSMo 2000, provides that in a county where there is no board of election commissioners, the county clerk may employ staff members to help with the conduct of elections. As stated above, § 115.055, RSMo 2000, allows for election authorities and designated employees to "administer oaths and perform all other duties necessary to register voters and conduct elections."

Section 115.115, RSMo 2000, outlines that the duty for the election authority to designate polling places, and the procedures to follow in so designating. Other sections, such as §§ 115.125, 115.127, and 115.391, RSMo 2000, discuss other duties of the election authority regarding the conduct of elections, such as notification of elections, preparation of ballots, and the timing for the declaration of candidacy.

One last statutory provision we will note here is § 115.353, RSMo 2000, which

states, in part, that the declaration of candidacy for any county office shall be filed "in the office of the county election authority." There is no similar statutory provision for a city office.

In her testimony at the hearing, County Clerk noted that, in her capacity as Taney County clerk, she would conduct the April 6, 2004, municipal election for the City of Branson. County Clerk pointed to such duties related to that, including the printing of ballots, after receiving a certified sample ballot from the City of Branson.

City Clerk in her testimony agreed that County Clerk conducted the elections, and performed duties related to the conduct of elections, such as designating polling places and printing ballots. City Clerk testified that she (City Clerk) prints the sample ballot and sends it to County Clerk after certifying it. An exhibit was entered into evidence, a manual published by the Missouri Municipal League, a trade organization for city clerks. According to City Clerk, based partly on the guidelines in the manual, she determined that it was part of her duties "to check for candidate qualifications." City Clerk also indicated that someone in the Secretary of State's office instructed her that she was the one to be making the residency determination for Thomas, "that the County Clerk only conducts the election[.]"

Considering the statutes and testimony discussed above, we come to the conclusion that City Clerk does not have the discretion to decide whose names are placed on the ballot. We do agree though that City Clerk has, among her duties under the ordinance in which she is named the "election authority" for the City of Branson, a ministerial duty to certify the names of candidates. However, where, as here a candidate met his statutory obligations, such as not being in arrears in taxes and timely filing his written, signed, and sworn declaration of candidacy with the City Clerk's office, we find no basis under which City Clerk may make a discretionary decision not to certify the name of that candidate.

It was not error for the trial court to enter a peremptory writ of mandamus on the grounds stated in Point I that there was no ministerial or statutory duty. Point I is denied.

*Point II—Thomas failed to meet the residency requirement of § 79.070 and therefore failed to meet his burden for a writ of mandamus*

■ In Point II, City Clerk argues that the trial court erred as a matter of law in issuing the peremptory writ of mandamus because Thomas failed to meet the residency requirement of § 79.070, RSMo 2000, and Thomas therefore, was not entitled to avail himself of mandamus. We disagree.

Recall our standard of review above, in particular that in our review we our mindful of the trial court's opportunity to have judged the credibility of the witnesses and we afford the trial court due deference in that regard. *Chowning v. Magness,* 792 S.W.2d 438, 439 (Mo.App.1990). Also, when neither party requests specific findings of fact or conclusions of law, all fact issues are considered to have been found in accordance with the result reached by the trial court. *Edmunds,* 87 S.W.3d at 29. Further, the judgment will be upheld on any reasonable theory supported by the evidence. *Weatherwax,* 953 S.W.2d at 167.

■ Residency is a question of fact that is to be determined from the acts and intentions of an individual citizen. *Marre v. Reed,* 775 S.W.2d 951, 954–55 (Mo. banc 1989). Here, we find that there was substantial evidence before the trial court for it to have determined that Thomas met the residency requirement under § 79.070,

RSMo 2000, which is the only determination on the fact issue of residency that is in accordance with the judgment.

Thomas signed a declaration for candidacy attesting that he met the residency requirement and that, if elected, he would be qualified. In addition, he signed an affidavit, subject to § 115.347.2, RSMo 2000, under which "[a]ny person filing a declaration of candidacy containing a false or forged signature or containing the name of a nonexistent or fictitious person shall be guilty of a class one election offense."

There was also evidence at trial regarding Thomas' acts and intentions. He testified that, prior to January 2003, he considered his Stone County address as his residence, but that, after that time, he considered the West Highway 76 address as his residence. Thomas is a known business man and investor in Branson, and also was politically involved, and had donated $16,000 to a Branson mayoral candidate on the ballot in April 2003. He testified that he was not "happy financially" with what was occurring in Branson. Thomas' drivers license, although the record does not reflect the date of issuance, (but does reflect an expiration date of 4–20–2006) lists his residence as 3431 West Highway 76. Thomas testified that he eats ninety percent of his meals at that address, spends most of his time there, keeps personal effects there, and spends three or four nights a week there (along with his wife), and receives mail, including magazine subscriptions, there.

Thomas was questioned on cross-examination as to when he made his determination to move to Branson. On cross-examination by City Clerk's attorney, Thomas was asked whether he considered the hotel his residence before January 2003, to which Thomas relied, "We planned to, yes, but we made the decision in January, sir.

That's when it became definite." City Clerk's counsel also asked whether Thomas' decision to move was as a result of the April 2003, elections and therefore, made subsequent to that time. Thomas answered that it was during that timeframe that he "made the definite decision to do so .... [a]lthough we'd [he and his wife] been planning [and] ... made the definite decision in—about in January, okay." Thomas was then asked about an exchange of questions and answers in his deposition:

> [Counsel for City Clerk]: So subsequent to that election, you said, "I'm going to make myself eligible. I'm going to start moving everything over here," correct?
>
> [Thomas]: I've become a resident, yes, of Ward I.
>
> [Counsel]: That's right. And that was subsequent to the April elections, correct?
>
> [Thomas]: Yes.

Returning to the cross-examination, Thomas protested that he was confused at the deposition, "I think you're correctly, but you—you had me circular. 'Subsequent'—I didn't pick up on you—I said 'prior,' and I held to it every time that January is when we made the decision. You put—sort of—words in my mouth at the time." Later, on re-cross by County Clerk's counsel, Thomas was asked, "So the reason you—you moved over to Branson was because what happened in the April election was not favorable to your political point of view?" Thomas replied, "That's when I made the definite time. However, we were planning on it otherwise—forgetting the politics of it."

Essentially, it was for the trial court to weigh the credibility of the witnesses, and, as stated, there was ample evidence for the trial court to have found that Thomas met

 

the residency requirement of § 79.070, RSMo 2000. Point II is denied.

## Conclusion

The trial court did not abuse its discretion in granting a writ of mandamus in favor of Thomas, ordering City Clerk to certify Thomas' name as a candidate for Alderman–Ward I. The judgment is affirmed.

BARNEY, P.J., concurs; GARRISON, J., concurs in result.