STATE of Missouri EX REL. Joel YOEST, Dawn Yoest, Liberty Assets, LLC, Liberty Asset Holdings, LLC, Jupiter Group, LLC, Castle Associates, LLC, Five Star Investors, LLC, Appellants,

v.

Lydia H. MCEVOY, Clay County Missouri Collector of Revenue, Respondent.

WD 80556

Missouri Court of Appeals, Western District.

OPINION FILED: October 3, 2017

Jonathan Sternberg, Kansas City, MO, Counsel for Appellants.

Patricia Hughes, Liberty, MO, Counsel for Respondent.

Before Division Three: Alok Ahuja, P.J., Thomas H. Newton, and Cynthia L. Martin, JJ.

Thomas H. Newton, Judge

Mr. Joel and Ms. Dawn Yoest and their business entities (hereinafter referred to as "The Yoests") appeal the Clay County circuit court's judgment dismissing their petition for a writ of mandamus against Clay County Collector of Revenue Lydia McEvoy. We reverse.

On August 16, 2016,[1] Ms. Lydia McEvoy emailed the Yoests to inform them that she was permanently banning them from participating in the 2016 tax sale as well as any future tax sales in Clay County. Ms. McEvoy informed the Yoests that this decision was the result of an ongoing investigation against them.

The following day, the Yoests filed a petition for a writ of mandamus and requested a temporary restraining order against Ms. McEvoy. The writ sought to command Ms. McEvoy to "cease and lift any and all bans against [the Yoests] from participating in present and future Clay County, Missouri tax" sales. The Yoests also requested that the court enter a preliminary order in mandamus forcing Ms. McEvoy to answer their petition. The Yoests argued that nothing in the statutes gave Ms. McEvoy the power to stop them from participating in the tax sale.

Ms. McEvoy opposed the petition and the restraining order, arguing that she had a duty "to refuse bids from those who have demonstrated a history of dishonesty, lack of integrity, and lack of reliability." She said that due to the ongoing investigation, it "became necessary to ban them as bidders in order to protect the taxpayers of the county, uphold the due process rights of taxpayers, and protect the integrity of the tax sale process." Ms. McEvoy listed the following six allegations against the Yoests: (1) failed to personally serve someone in a quiet title action, (2) persuaded the court to award them a tax sale surplus, (3) refused to deliver the tax sale surplus to the former owner, (4) convinced an owner to sign a quitclaim deed without informing the owner of the possibility of a surplus, (5) harassed a property owner into signing a quitclaim deed by threatening to call the police, and (6) prepared a form

---

1. This was six days before the 2016 tax sale was meant to take place.

that falsely stated that an estate had no interest in the subject property. Ms. McEvoy argued that the Yoests did not show that they had a right to be a bidder at the tax sale. She asked the court to deny the temporary restraining order and set a hearing for the mandamus to determine whether the Yoests should be permanently banned.

The trial court denied the request for the temporary restraining order on August 19, 2016, and held that "[m]andamus is available only when there is an already existing legal right." The court did not engage in a discussion on the merits of the malfeasance claims. The Yoests moved the trial court to reconsider. The court issued a preliminary order in mandamus on August 29, 2016, commanding Ms. McEvoy to answer the petition.

Ms. McEvoy filed her answer on September 15, 2016, along with a motion to dismiss. The court granted the motion to dismiss on November 28, 2016, holding that the Yoests had "failed to establish a clear, unequivocal right to be bidders at the annual Clay County tax delinquency sale." The Yoests moved the court for a new trial and argued that an evidentiary hearing was necessary because the pleadings raised disputed issues of material fact. The trial court denied the post-judgment motion, and the Yoests appealed to the Missouri Supreme Court which transferred the appeal to this Court. The Yoests ask that this court either (1) issue a permanent writ of mandamus, or (2) remand the case for trial.

## Legal Analysis

The parties disagree on the proper standard of review. Our first task is to determine the correct standard. Ms. McEvoy argues that an appeal from a motion to dismiss must be reviewed *de novo*. We disagree.

The Yoests argue that the standard of review is the same as in *Professional Fire Fighters of Eastern Missouri v. City of University City*, 457 S.W.3d 23 (Mo. App. E.D. 2014). As here, the trial court issued a preliminary writ of mandamus and then dismissed the petition without holding an evidentiary hearing. *Id.* at 25. Therefore, the standard of review is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), and this Court will reverse the trial court's dismissal if the Yoests can demonstrate that it was not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Id.* at 26.

■■■ The trial court erred in ruling that mandamus did not lie because the Yoests have demonstrated that Ms. McEvoy had a ministerial duty to allow them to participate in the tax sale. A writ of mandamus is meant to "compel a public official to do that which he or she is obligated by law to do and undo that which he or she was prohibited by law from doing." *State ex rel. Thomas v. Neeley*, 128 S.W.3d 920, 924 (Mo. App. S.D. 2004). A party seeking a writ must "allege and prove he or she has a clear, unequivocal right to the thing claimed." *Banks v. Slay*, 410 S.W.3d 767, 769 (Mo. App. E.D. 2013) (citation omitted).

Ms. McEvoy and the circuit court claim that mandamus does not lie because the Yoests have failed to point to a clear and unequivocal right in the relevant statute. Ms. McEvoy suggests that for this writ to lie, the statute would need to say, "[a]ny person not delinquent on land taxes and signing an affidavit attesting to the same, who is a Missouri resident, shall have an absolute right to bid at the sale and have his or her bid accepted, should it be made for the required sum." We cannot agree with this narrow view. To determine the

intent of a statute, "the words must be considered in context and sections of the statutes in pari materia, as well as cognate sections, must be considered in order to arrive at the true meaning and scope of the words." *Bolen v. Orchard Farm R-V School Dist.*, 291 S.W.3d 747, 751 (Mo. App. E.D. 2009). "We must construe provisions of the entire legislative act together and, to the extent reasonably possible, harmonize all provisions." *Geary v. Mo. State Emps. Ret. Sys.*, 878 S.W.2d 918, 922 (Mo. App. W.D. 1994).

To demonstrate this principle, the Yoests cite *Neeley*, where the court held that the city clerk had no power to "make a discretionary decision not to certify the name of that candidate." *Neeley*, 128 S.W.3d at 927. The petitioner in that case filed a writ of mandamus to compel the city clerk to include his name on the official ballot so he could run for the position of alderman. *Id.* at 923. Under section 115.346-.347, RSMo (2000), any person wishing to have his or her name on the ballot must file a written, signed, and sworn declaration of candidacy with the appropriate election official and must not be in arrears for any unpaid city taxes. *Id.* at 925. In addition, section 79.070 provides that an alderman must be at least twenty-one years of age, a United States citizen, and a resident of the city for at least one year before the election when he/she files for candidacy and serves. *Id.* at 926. Nothing in the statute gave the city clerk any discretion to omit a candidate's name, and it was her ministerial duty, based on her duties as the "election authority," to certify the names of all candidates who complied with the guidelines previously mentioned. *Id.* at 927.

Ms. McEvoy argues that *Neeley* is distinguishable because, unlike the collector's duty, the city clerk's duty to certify the names was "ministerial, [and] detailed in statute." We disagree. The election duty of the city clerk is prescribed by ordinance and states *broadly*, "[t]he city clerk shall be the Election Authority for the city and shall perform all duties required." *Id.* at 925 (*citing* the Municipal Code). And under Missouri statute, "each election authority and its designated employees may administer oaths, perform all other duties necessary to register voters and conduct elections." RSMo § 115.055 (2000). Based on the ordinance as well as the Missouri statute, the court in *Neeley* determined that the city clerk had a ministerial duty and did not have the discretion to exclude the petitioner's name. *Id.* at 927.

In the present case, the collector has a ministerial duty to "commence" and "continue" the sale of lands that fit the definition of section 140.150[2] at a public auction. This statute is no more specific than the statutes in *Neeley*, and like *Neeley*, this statute does give the Yoests the right to be bidders.

Section 140.170 requires the collector to publish a list of the delinquent lands in a newspaper once a week for three weeks before the tax sale. Its chief purpose is to put current landowners on notice of their delinquency. *See* section 140.150 *generally*. But the secondary purpose is to provide notice to potential purchasers who may wish to purchase the lands at the *public* auction. Section 140.170.3. The public notice followed by the public auction leads this court to believe that a tax sale is an event meant to be open to all members of the public. The Yoests are members of the public and are, therefore, entitled to

**2.** Lands subject to sale are "[a]ll lands and lots on which taxes are delinquent and un- paid."

participate as long as they are not excluded by other statutory provisions. Ms. McEvoy argues that section 140.190.2 does not refer to persons who may be excluded from the tax sale and instead refers to who may be the winning bidder, therefore leaving her with exclusionary power. We disagree. We interpret this statute to mean only two categories of people can be excluded from the tax sale, those who are delinquent on any tax payments or those who are not Missouri residents and who have not consented to the county court's jurisdiction in writing. § 140.190.2. Given these two explicit exclusions and the auction's public nature, it is this Court's opinion that the Yoests had a clear and unequivocal right to participate in the tax sale.

 If the statute provides instruction on who can be banned, the collector does not have the discretion to ban people who fall outside of that instruction. In its judgment, the circuit court stated that "[r]espondent's obligation extends to banning participation of persons or entities which, in her *discretion*, fail to abide by the statutes or rules necessary to protect the rights of all property owners and of all bidders." (Emphasis added). The court cites no authority for this statement and, after our own review of the statutes, this Court can find nothing that would provide the county collector with the discretion to ban anyone from the tax sale. In the entirety of the statute the word "discretion" is mentioned once. Section 140.250.3 states that if, after a third offering, "any lands or lots are not sold ... the collector, *in his discretion*, need not again advertise or offer such lands or lots for sale more often than once every five years...." (Emphasis added). "It is well settled, in interpreting a statute, that the legislature is presumed to

have acted intentionally when it includes language in one section of a statute, but omits it from another." *Denbow v. State*, 309 S.W.3d 831, 835 (Mo. App. W.D. 2010) (citation omitted). "A disparate inclusion or exclusion of particular language in another section of the same act is 'powerful evidence' of legislative intent." *Id.* (citation omitted). " '[A]dministrative agencies—legislative creations—possess only those powers expressly conferred or necessarily implied by statute.' " *United Pharmacal Co. of Mo. v. Mo. Bd. of Pharmacy*, 208 S.W.3d 907, 913 (Mo. banc 2006) (quoting *Bodenhausen v. Mo. Bd. of Reg'n for Healing Arts*, 900 S.W.2d 621, 622 (Mo. banc 1995)). If the collector were meant to have discretion in carrying out her other duties, the statute would expressly confer or necessarily imply that she has the power to do so, and it does not.

### Conclusion

This Court may reverse or affirm the judgment of the trial court or "give such judgment as the court ought to give." Rule 84.14. The Yoests have demonstrated a clear and unequivocal right to be bidders and, in the interest of finally disposing of this case, we hereby reverse the circuit court's decision and Ms. McEvoy is ordered to permit the Yoests to participate in future tax sales so long as they qualify as bidders as described in section 140.190.2.[3]

Alok Ahuja, P.J., and Cynthia Martin, J. concur.

---

3. Though we hold that the Collector does not

possess the discretion or authority to unilater-

ally exclude potential bidders from tax sales who otherwise satisfy express statutory qualifications, nothing herein should be read to prohibit the Collector or any other person's ability to pursue legal or equitable remedies

which may otherwise be available to address the Collector's assertions about the Yoests.